223 P.3d 1158 (2009)
153 Wash.App. 265
STATE of Washington, Respondent,
v.
Ricardo L. AGUILAR, Appellant.
No. 26998-1-III.
Court of Appeals of Washington, Division 3, Panel Eight.
September 3, 2009.
Publication Ordered December 8, 2009.
*1159 Janet G. Gemberling, Gemberling & Dooris, PS, Seattle, WA, for Appellant.
James Lyle Nagle, Office of the Pros. Attorney, Walla Walla, WA, Teresa J. Chen, Attorney at Law, Soap Lake, WA, for Respondent.
KULIK, A.C.J.
¶ 1 Ricardo L. Aguilar challenges his convictions for escape from community custody and bail jumping. Concluding that the trial court committed no error, we affirm.

FACTS
¶ 2 Following his June 2006 conviction for possession of methamphetamine in Walla Walla County Superior Court No. 06-1-00134-3, Ricardo Aguilar was serving a 12-month term of community custody. The court imposed additional conditions of community custody which required Mr. Aguilar to "report to his ... Community Supervision Officer as directed." Clerk's Papers (CP) at 54.
¶ 3 Mr. Aguilar was scheduled to go to trial in Oregon in January 2007 on a charge of failure to appear. When the Oregon court learned that Mr. Aguilar was incarcerated in Walla Walla County, the court took the trial off its schedule and sought his removal to Oregon. Mr. Aguilar was released from incarceration in Oregon on January 23, 2007, due to jail overpopulation with a requirement that he attend a court appearance in Oregon on February 26.
¶ 4 Mr. Aguilar immediately reported to his supervisor in Walla Walla, Washington, on January 23 and again on February 13. Thereafter, he failed to report, as required, until July 2.
¶ 5 Mr. Aguilar's community corrections officer (CCO), Alice Rogers, testified that she contacted Mr. Aguilar in early May at his last known addresshis parents' residence in Walla Walla. According to Ms. Rogers, *1160 Mr. Aguilar answered the door and she spoke to him, but he ultimately pushed her out of the doorway and closed the door. Ms. Rogers then contacted police for additional assistance and they responded because there was also a warrant out for his arrest.
¶ 6 Mr. Aguilar was arrested in Walla Walla in May and again in July 2007. The State charged him with escape from community custody.
¶ 7 Trial on the escape charge was scheduled for October 23, 2007. However, in September, a warrant was issued for Mr. Aguilar's arrest because he had failed to maintain contact with his attorney. Court did not convene on October 23, 2007. Mr. Aguilar was arrested on December 11 and next appeared in court on December 12.
¶ 8 The State subsequently amended the information, charging Mr. Aguilar with escape from community custody between February 13 and May 11, 2007, and with bail jumping on October 23, 2007.
¶ 9 The case was tried before a jury on January 30, 2008, and February 25, 2008. At trial, Ms. Rogers told the jury, over defense counsel's relevancy objection, about a telephone exchange that took place sometime after July 17, 2007, in which Mr. Aguilar refused to report, used profanities, and told Ms. Rogers the State could not catch him.
¶ 10 Ms. Rogers continued to testify, again over defense counsel's relevancy objection, that Mr. Aguilar had failed to report as required during September and October, and that the Department of Corrections had issued a warrant on July 31.
¶ 11 Mr. Aguilar testified that he had been in and out of jail in Washington and Oregon since 2005 and released from incarceration in each state with requirements to remain in that state and be available for court dates or supervision. Mr. Aguilar told the jury that he had tried to explain this situation to his CCO, and that he had told her that he would be going to Oregon. Ms. Rogers testified that although Mr. Aguilar had informed her that he had a pending case in Oregon, he never followed through with the paperwork necessary to transfer his probation to Oregon.
¶ 12 The jury returned guilty verdicts on both charges. This appeal followed.
¶ 13 On January 31, 2008, as part of a plea negotiation wherein Mr. Aguilar agreed to waive his right to appeal his conviction in this case, he pleaded guilty to three counts in Walla Walla County Superior Court No. 07-1-00437-5. That case is now the subject of an appeal in Court of Appeals No. 27099-8-III.

ANALYSIS
¶ 14 Mr. Aguilar first contends that the trial court erred by overruling defense counsel's relevancy objections and permitting Ms. Rogers to tell the jury about a telephone conversation which occurred sometime after July 17, 2007, in which Mr. Aguilar allegedly made numerous offensive remarks and stated he would not be reporting as required. Similarly, Mr. Aguilar contends the trial court erred by allowing Ms. Rogers's testimony that he failed to contact his CCO in September and October 2007. Mr. Aguilar points out that he was charged with escape from community custody between February and May and with bail jumping for failure to appear for trial in October. He argues that the admission of such evidence was irrelevant and unfairly prejudicial.
¶ 15 The State responds that the telephone conversation was relevant to show Mr. Aguilar's mental state (i.e. that he had willfully failed to report to his CCO). Similarly, the State responds that the testimony concerning contact (or lack thereof) in September and October was relevant to establish the time frame the crimes were alleged to have been committed, Mr. Aguilar's strong dislike for his CCO and motive to not report, and provided circumstantial evidence of Mr. Aguilar's continuing state of mind on his duty to report. We agree.
¶ 16 To prove the crime of escape from community custody, the State had to prove that Mr. Aguilar "willfully discontinue[d] making himself ... available to the department for supervision by making his ... whereabouts unknown or by failing to maintain contact with the department as directed by [his] community corrections officer" on or *1161 between February 13, 2007, and May 11, 2007. RCW 72.09.310.
¶ 17 A person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime. RCW 9A.08.010(1)(a). A requirement that an offense be committed willfully is satisfied if a person acts knowingly with respect to the material elements of the offense. RCW 9A.08.010(4).
¶ 18 To prove the crime of bail jumping, the State had to prove that Mr. Aguilar had knowledge of the requirement of a subsequent personal appearance before any Washington court and failed to appear as required. RCW 9A.76.170(1). A person knows or acts knowingly or with knowledge when he or she (1) is aware of a fact, circumstance, or result described by a statute as being a crime, or (2) has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute as being a crime. RCW 9A.08.010(l)(b).
¶ 19 To be admissible, evidence must be relevant. ER 402. Under ER 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Even if relevant, however, evidence may still be excluded under ER 403 "if its probative value is substantially outweighed by the danger of unfair prejudice." Still, "[t]he threshold to admit relevant evidence is very low [and even] minimally relevant evidence is admissible." State v. Darden, 145 Wash.2d 612, 621, 41 P.3d 1189 (2002) (citing State v. Hudlow, 99 Wash.2d 1, 16, 659 P.2d 514 (1983)). The decision to admit evidence lies within the sound discretion of the trial court and will not be overturned absent a manifest abuse of that discretion. State v. Neal, 144 Wash.2d 600, 609, 30 P.3d 1255 (2001).
¶ 20 The challenged testimony of Ms. Rogers was directly relevant to the issue of whether Mr. Aguilar willfully discontinued making himself available to the Department of Corrections for supervision. As Mr. Aguilar acknowledges, the call "related solely to his willingness to comply with the supervision requirements." Br. of Appellant at 6. Likewise, Ms. Rogers's testimony that Mr. Aguilar reported in July and had telephone contact with her in Augustbut no contact in September and Octoberwas relevant to explaining that a warrant was issued and to establishing that Mr. Aguilar had the requisite knowledge. In sum, the testimony satisfies the test for relevancy under ER 401 and its probative value outweighed any prejudicial effect under ER 403. We find no abuse of discretion in the trial court's ruling.
¶ 21 Mr. Aguilar next contends that the trial court violated his right to testify and present a defense by improperly excluding testimony concerning his discussions with an attorney in Oregon. Mr. Aguilar argues that this testimony was central to his defense to the escape charge because it would have shown his lack of willfulness in failing to comply with the terms of his community custody.
¶ 22 At trial, Mr. Aguilar attempted to testify that his lawyer in Oregon advised him to go to Washington to report to his CCO. Mr. Aguilar's defense was that he had tried to comply with the requirements of his community custody, but had been defeated by the impossibility of remaining in Oregon and Washington simultaneously.
¶ 23 In support of that claim, Mr. Aguilar sought to testify that in January he consulted with his attorney about leaving Oregon to come to Washington, and the attorney had endorsed that decision. When he told the jury that his lawyer had advised him to go to Washington to report to his CCO, the State's hearsay objection was sustained. The State's hearsay objection and motion to strike came after the jury heard Mr. Aguilar's testimony. Although the court sustained the objection, the court did not strike the testimony or instruct the jury to disregard it. When Mr. Aguilar sought to tell the jury on two later occasions about what his attorney had said to him, the court again sustained the State's hearsay objections.
¶ 24 Mr. Aguilar nevertheless testified at length concerning his reporting issues with Washington and Oregon, including other *1162 statements about what his lawyer had told him. But Mr. Aguilar fails to show how his lawyer's advice to report in Washington is relevant to his defense. To the contrary, it would have been relevant to the State's case to show that he knew of his reporting obligation.
¶ 25 A lawyer's advice to a client to not report is not a defense to the crime of escape from community custody. And if one is to understand the proffered testimony, neither is a lawyer's advice to a client to report. Testimony in support of either theory is, therefore, not relevant, especially when Mr. Aguilar later testified that he ultimately did not follow his lawyer's advice by failing to report.
¶ 26 A criminal defendant has the right to present a defense. Hudlow, 99 Wash.2d at 14-15, 659 P.2d 514 (citing Washington v. Texas, 388 U.S. 14, 23, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)). But a criminal defendant has no constitutional right to have irrelevant or inadmissible evidence admitted in his or her defense. Hudlow, 99 Wash.2d at 15, 659 P.2d 514. A trial court's ruling on the admissibility of evidence will be disturbed on appeal only if there is an abuse of discretion. State v. Magers, 164 Wash.2d 174, 181, 189 P.3d 126 (2008).
¶ 27 The trial court properly excluded the proffered testimony. However, even if it was error to exclude the testimony, either because the testimony was not hearsay or an exception to the hearsay rule applied, Mr. Aguilar testified at length about his own state of mind. Accordingly, any error would have been harmless. The trial court did not deny Mr. Aguilar the right to present a defense.
¶ 28 Third, Mr. Aguilar contends that there was insufficient evidence to support his conviction for bail jumping. As set forth in the first element of the bail jumping instruction, the jury was required to find beyond a reasonable doubt "[t]hat on or about the 23rd day of October, 2007, the defendant knowingly failed to appear before a court." Clerk's Papers at 76. Mr. Aguilar points out that the court did not convene on that date and that the State did not present any witness who was present at the time Mr. Aguilar was required to appear. Accordingly, he contends that, on this record, there is no evidence that he had failed to appear and, therefore, no evidence to support the jury's verdict. Mr. Aguilar further argues that his later testimony that he did not believe he had to appear does not support the inference that he did not, in fact, appear. Mr. Aguilar's argument is unpersuasive.
¶ 29 Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Joy, 121 Wash.2d 333, 338, 851 P.2d 654 (1993). "When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). Moreover, "[a] claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id.
¶ 30 In the present case, sufficient evidence supports Mr. Aguilar's bail jumping conviction. Under RCW 9A.76.170, the crime of bail jumping is defined as:
(1) Any person having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state, or of the requirement to report to a correctional facility for service of sentence, and who fails to appear or who fails to surrender for service of sentence as required is guilty of bail jumping.
"The elements of bail jumping are satisfied if the defendant (1) was held for, charged with, or convicted of a particular crime; (2) had knowledge of the requirement of a subsequent personal appearance; and (3) failed to appear as required." State v. Downing, 122 Wash.App. 185, 192, 93 P.3d 900 (2004).
¶ 31 Mr. Aguilar argues that, because the court did not convene on October 23, it was impossible to determine whether he failed to appear for the hearing. But the evidence at trial showed that Mr. Aguilar knew he had a *1163 court date of October 23, 2007, and that he failed to appear.
¶ 32 First, the knowledge element of the crime of bail jumping requires that the State prove beyond a reasonable doubt that the defendant knew, or was aware, that he was required to appear at the scheduled hearing. State v. Ball, 97 Wash.App. 534, 536, 987 P.2d 632 (1999) (quoting State v. Bryant, 89 Wash.App. 857, 870, 950 P.2d 1004 (1998)). According to the clerk, the date of trial was set when Mr. Aguilar was arraigned in August 2007. Mr. Aguilar readily admitted during his testimony that he knew he was to appear in court for trial on October 23, that he did not appear on that date, and that he did not intend to appear in court on that date.
¶ 33 Moreover, the trial date of October 23, 2007 was never stricken by the trial court. The trial date was still left on the trial court's calendar. Importantly, failure of the court to convene for trial is not an element of the crime. See Downing, 122 Wash.App. at 192, 93 P.3d 900.
¶ 34 As the State correctly points out, the issue of whether a court's failure to convene on the day the defendant was alleged to have bail jumped has not been addressed in Washington. The State argues that a similar situation occurred in State v. Adkins, 678 S.W.2d 879 (Mo.App.1984). We find the reasoning in Adkins instructive.
¶ 35 In Adkins, Michael Adkins appealed his conviction for failure to appear on the ground that the evidence could not support the conviction because the judge was not present in the court at the time Mr. Adkins was scheduled to appear for sentencing. Id. at 880. Mr. Adkins's theory on appeal was that the failure to appear statute could be violated only if the court was in session at the appointed time and place. Id. at 881. The failure to appear statute did not address the issue of whether the judge was present, nor did it make the defendant's guilt or innocence contingent upon the judge actually being on the bench at the appointed hour, and the court affirmed the conviction. The Adkins court explained its reasoning as follows:
While we commend [Mr.] Adkins for the ingenuity of his argument, we find it unconvincing. It would be illogical, we think, to hold that a defendant who willfully fails to appear in court at the time required is guilty of a violation of § 544.665.1 only if the judge is then on the bench. Had [Judge] Seier been in chambers at the Cole County Courthouse on the morning of July 8, 1981, could it be persuasively argued that [Mr.] Adkins' guilt or innocence of failure to appear should hinge on whether [Judge] Seier ascended the bench and called court to order? We think not. Such reasoning would put form above substance, and run counter to common experience. Busy judges routinely have court personnel check on the presence of litigants, attorneys and witnesses, remaining at their desks until all parties are in place for court proceedings.
Id. at 882.
¶ 36 Here, the trial court would not have been able to proceed with Mr. Aguilar's trial on October 23, 2007, without Mr. Aguilar's presence. As was the case in Adkins, there was little or no reason to convene court on that day when the court had already issued a bench warrant for Mr. Aguilar's arrest, based on his failure to maintain contact with his attorney. Applying the reasoning in Adkins, whether a person is guilty of bail jumping does not depend on whether the court convened to hear his or her case.
¶ 37 In sum, Mr. Aguilar was required to be in court on October 23, 2007, he was aware that he was required to appear, and he failed to appear as required. Sufficient evidence supports his conviction for bail jumping.

STATEMENT OF ADDITIONAL GROUNDS
¶ 38 Mr. Aguilar filed a pro se statement of additional grounds for review, raising three additional issues for review. He contends that: (1) the "to convict" instruction failed to classify the underlying charge and is, therefore, constitutionally insufficient, (2) the prosecutor's action in amending the information six days prior to trial was motivated by prosecutorial vindictiveness, and (3) the State *1164 failed to establish the corpus delicti for the bail jumping charge. Mr. Aguilar's arguments are without merit.
¶ 39 First, Mr. Aguilar contends that the trial court erred by issuing an erroneous "to convict" instruction to the jury that omitted an essential element of bail jumping.
¶ 40 On appeal, this court reviews instructional errors de novo. State v. Brett, 126 Wash.2d 136, 171, 892 P.2d 29 (1995). A jury instruction must state the applicable law correctly. State v. Mark, 94 Wash.2d 520, 526, 618 P.2d 73 (1980). Both the United States and Washington constitutions require that the jury be instructed on all the essential elements of the crime charged. State v. Van Tuyl, 132 Wash.App. 750, 758, 133 P.3d 955 (2006) (citing U.S. CONST. amend. VI; CONST. art. I, § 22).
¶ 41 A jury instruction which omits an essential element of a crime relieves the State of its burden of proving each element of the crime charged beyond a reasonable doubt and is a violation of due process. State v. Chino, 117 Wash.App. 531, 538, 72 P.3d 256 (2003). Therefore, the "issue of omission of an element from that instruction is of sufficient constitutional magnitude to warrant review when raised for the first time on appeal." State v. Mills, 154 Wash.2d 1, 6, 109 P.3d 415 (2005).
¶ 42 Relying on State v. Pope, 100 Wash.App. 624, 999 P.2d 51 (2000), Mr. Aguilar argues that "classification" of the underlying offense is an essential element of the crime of bail jumping. Statement of Additional Grounds (SAG) at 4. The court in Pope held that "one of the elements of bail jumping is that the defendant was held for, charged with, or convicted of a particular crime." Id. at 629, 999 P.2d 51 (emphasis added).
¶ 43 While Mr. Aguilar acknowledges that the "to convict" instruction expressly identified the underlying charge as escape from community custody, he argues that the instruction "fails to classify the underlying charge." SAG at 5. There is no authority for Mr. Aguilar's argument.
¶ 44 Second, Mr. Aguilar contends that the prosecutor's action in amending the information to charge him with bail jumping, after plea negotiations failed, and six days before trial, violated his right to due process and constituted prosecutorial vindictiveness.
¶ 45 Mr. Aguilar was charged with escape from community custody on July 3, 2007. On August 13, trial was set for October 23. However, on September 25, a warrant was issued for Mr. Aguilar's arrest for failure to maintain contact with his attorney. After finally being arrested in early December, Mr. Aguilar was brought before the court on December 12. The trial court revoked Mr. Aguilar's pretrial release and set a trial date in January 2008. According to Mr. Aguilar, he was unsuccessful in negotiating a plea agreement with the State, and the case proceeded to a jury trial. Mr. Aguilar asserts that it was only after plea negotiations failed that the prosecutor amended the information to charge Mr. Aguilar with a one count of bail jumping.
¶ 46 Mr. Aguilar contends that by adding the charge of bail jumping, the prosecutor sought to punish him for exercising his constitutional right to a jury trial. As such, he argues that the prosecutor's actions were vindictive as provided in United States v. Goodwin, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). As part of his argument, Mr. Aguilar also contends that there was no reasonable basis for the bail jumping charge. Mr. Aguilar claims that "[i]n the underlying case where the prosecutor brought forth the charge after the appellant refused to take a plea, and instead chose to go to trial, for a crime that happened 3 months prior to the date of the charge gave rise to an impermissible appearance of retaliation." SAG at 10. Mr. Aguilar's argument is without merit.
¶ 47 The court in Goodwin noted that "[t]he imposition of punishment is the very purpose of virtually all criminal proceedings." Id. at 372, 102 S.Ct. 2485. Where the State has taken action detrimental to the defendant after the defendant has exercised a legal right, the court will presume an improper vindictive motive "only in cases in which a reasonable likelihood of vindictiveness exists." Id. at 373, 102 S.Ct. 2485. As determined above, the bail jumping charge was supported by substantial evidence. There is *1165 no evidence in the record that suggests that the prosecutor's action was anything but "fully justified as a legitimate response to perceived criminal conduct." Id. A presumption of prosecutorial vindictiveness is not warranted in this case and, absent such a presumption, no due process violation is established.
¶ 48 Third, and finally, Mr. Aguilar contends the State failed to establish the corpus delicti for bail jumping. However, what Mr. Aguilar appears to argue is that the evidence was insufficient to support his conviction for bail jumping. Mr. Aguilar's assertion that an essential element of bail jumping cannot be established because the trial court did not convene on the date in question was addressed previously and is without merit.
¶ 49 We affirm the convictions of escape from community custody and bail jumping.
WE CONCUR: SWEENEY and BROWN, JJ.