IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32559-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW S. GAROUTTE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Matthew Garoutte was convicted of possession of a controlled substance (methamphetamine) and bail jumping following a unitary trial in which he waived jury trial on the possession of a controlled substance count and tried only the bail jumping count to the jury.

He appeals his conviction for bail jumping, contending (1) his right to an impartial jury was violated when issues of alleged bias on the part of two jurors arose after voir dire and the court denied both a motion for mistrial and a request to substitute alternate jurors, and (2) irrelevant and unduly prejudicial evidence of his arrest for the bail

jumping charge was admitted in error. In a pro se statement of additional grounds, he complains of a violation of his right to a speedy trial and that the amended information omitted an essential element of bail jumping. We find no error or abuse of discretion and affirm.

## FACTS AND PROCEDURAL BACKGROUND

Matthew Garoutte was arrested on April 3, 2013, on an outstanding Department of Corrections warrant. At the time of his arrest, Mr. Garoutte was sitting in a friend's pickup truck. A backpack was in the bed of the truck.

After Mr. Garoutte's arrest, the owner of the pickup truck contacted police and told them the backpack did not belong to him. Officers logged the backpack into evidence and inventoried its contents, which were found to include a glass smoking pipe containing residue that proved to be methamphetamine.

A few days later, Mr. Garoutte traveled to the police department to retrieve the backpack, which he claimed belonged to him. The police returned everything but the pipe. In light of Mr. Garoutte's self-proclaimed ownership of the backpack, the State charged him with one count of possession of a controlled substance (methamphetamine).

On August 20, 2013, Mr. Garoutte was arraigned and the court set release conditions and scheduled the omnibus hearing in his case for October 8. Mr. Garoutte failed to appear for the omnibus hearing. A bench warrant was issued, and the State

amended the information to add a count of bail jumping. A Grant County deputy sheriff arrested Mr. Garoutte on January 18, 2014, on a failure to appear warrant.

Mr. Garoutte waived a jury trial on the possession of a controlled substance count but not on the bail jumping count. The case proceeded to a unitary jury trial where evidence was presented on both counts. The court informed the jury it was to consider only the bail jumping count.

After voir dire, and during the parties' exercise of their peremptory challenges, the trial judge told the lawyers that juror 9 lived across the street from him. Juror 9 was not stricken by either party.

After jury selection was completed, Mr. Garoutte moved for a mistrial based on the disclosed relationship between juror 9 and the trial judge, arguing that he had been denied effective assistance of counsel because he had been unable to explore the relationship in voir dire. In denying the motion, the judge elaborated a bit more on his relationship with juror 9, stating that he and juror 9 and their respective daughters had been friends for many years, but emphasizing that he and juror 9 had never discussed Mr. Garoutte's case. He also stated, "I don't know of any reason why my acquaintance with [juror 9] would disqualify him, and I don't know of any reason why counsel could not, frankly, ask the entire panel whether they knew me or were acquainted with me." Report of Proceedings (RP) at 61.

3

On the morning after the jury was selected, Mr. Garoutte's lawyer reiterated his concern about juror 9 and suggested that the trial court replace juror 9 with one of the alternate jurors. The trial court responded that it would take the suggestion under advisement.

The court then informed the lawyers that, on a related note, the county's deputy clerk, Marla Webb, who the State planned to call as a witness on the bail jumping charge, had informed the court that morning that she and juror 8, who had also been seated on the jury, were next-door neighbors. Although prospective jurors had been read the names of witnesses including Ms. Webb, juror 8 had not disclosed that she knew Ms. Webb. The trial court told the parties, "[W]e don't need to take care of that now. But I'll let you stew on that a little bit. We'll talk about that later." RP at 71.

The State called Ms. Webb to testify in its case-in-chief. She testified that Mr. Garoutte was present in court on August 20, 2013, the day on which the October 8 omnibus hearing was scheduled. It called Douglas Mitchell, a former Grant County deputy prosecutor who handled Mr. Garoutte's arraignment on August 20. He testified that Mr. Garoutte was present in court that day and that the court had read aloud the release conditions included in its August 20 order. The State also called Deputy Jacob Fisher, who had arrested Mr. Garoutte in January 2014 on the failure to appear warrant. Over Mr. Garoutte's objection that the testimony was irrelevant and prejudicial, the State elicited the deputy's testimony about the fact and the timing of that arrest.

4

The State offered and the court admitted certified copies of the criminal minute sheet from August 20, 2013, indicating the omnibus hearing was set for October 8, 2013; a criminal case scheduling order requiring Mr. Garoutte to be in court on October 8, 2013; an order setting conditions for release, unsigned by Mr. Garoutte, requiring Mr. Garoutte to appear in court on October 8, 2013; and a bench warrant commanding Mr. Garoutte's arrest.

Before jury deliberations, Mr. Garoutte renewed his request that the trial court replace juror 9 with an alternate juror and added a request that juror 8 be replaced with an alternate juror as well. The trial court offered to question juror 8 regarding her relationship with Ms. Webb, but Mr. Garoutte declined the offer. The court then refused the request for substitution, stating, "I don't think there's a legal basis in either case at this point to substitute the jurors in." RP at 273.

The trial court found Mr. Garoutte guilty of possession of a controlled substance (methamphetamine) and the jury found Mr. Garoutte guilty of bail jumping. Mr. Garoutte appeals.[1]

---

[1] Among Mr. Garoutte's assignments of error in his opening brief was the trial court's failure to enter findings of fact and conclusions of law on the possession of a controlled substance count. Before scheduling the appeal for hearing, this court directed the State to procure the entry of written findings of fact and conclusions of law and supplement the clerk's papers, which was done.

ANALYSIS

*I.  Impartial jury*

Mr. Garoutte's first assignment of error is to the trial court's denial of both his motion for a mistrial and his subsequent request that the court replace juror 8 and juror 9 with alternate jurors before submitting the case to the jury for deliberation.  Mr. Garoutte contends that the relationships of juror 8 and juror 9 to individuals involved in the trial indicate "bias" that he was unable to explore.  Br. of Appellant at 11.

Both the United States and Washington State Constitutions provide a right to trial by an impartial jury, which "requires a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct." *State v. Boiko*, 138 Wn. App. 256, 260, 156 P.3d 934 (2007); U.S. CONST. amend. VI; CONST. art. I, § 21.  RCW 2.36.110 provides:

> It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

CrR 6.5 states, "If at any time before submission of the case to the jury a juror is found unable to perform the duties the court shall order the juror discharged." RCW 2.36.110 and CrR 6.5 impose on the trial court a continuing obligation to excuse any juror who is unfit to serve on the jury. *State v. Jorden*, 103 Wn. App. 221, 227, 11 P.3d 866 (2000).

A juror must be excused for either actual or implied bias. *Kuhn v. Schnall*, 155 Wn. App. 560, 574, 228 P.3d 828 (2010).  Actual bias requires "the existence of a state of

mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). Implied bias requires "'the existence of the facts [that] in judgment of law disqualifies the juror.'" *Kuhn*, 155 Wn. App. at 574 (alteration in original) (quoting RCW 4.44.170(1)). RCW 4.44.180 provides four bases for a challenge for implied bias: consanguinity to a party, certain relationships to a party such as landlord and tenant, having served as a juror in a case with substantially the same facts, and interest in the event of the action or the principal question.

When Mr. Garoutte moved the trial court for a mistrial on account of its relationship with juror 9, the court and the lawyers discussed the fact that the court's disclosure of the relationship had been made while the parties were exercising their peremptory challenges. The record does not indicate precisely *when* in the course of that process the disclosure was made. "A party accepting a juror without exercising its available challenges cannot later challenge that juror's inclusion." *State v. Reid*, 40 Wn. App. 319, 322, 698 P.2d 588 (1985) (citing *State v. Jahns*, 61 Wash. 636, 112 P. 747 (1911). If the disclosure was made when Mr. Garoutte had not exhausted his peremptory challenges, he should not be heard to complain at all about juror 9's service. Not knowing whether that was the case, we analyze his challenge to juror 9 further.

7

None of the four statutory bases for implied bias exist in the case of juror 8 or juror 9. Turning to Mr. Garoutte's charge of actual bias on the part of the jurors, a party challenging a juror for actual bias must show such bias by a preponderance of the evidence. *Ottis v. Stevenson-Carson Sch. Dist. No. 303*, 61 Wn. App. 747, 754, 812 P.2d 133 (1991). To show bias, the party "'must show more than a mere possibility that the juror was prejudiced.'" *State v. Noltie*, 116 Wn.2d 831, 840, 809 P.2d 190 (1991) (emphasis omitted) (quoting 14 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: TRIAL PRACTICE CIVIL § 202 (4th ed. 1986)).

Mr. Garoutte does not point to any evidence of actual bias on the part of the two jurors. He merely speculates that, because juror 8 lived next door to Ms. Webb, the juror was biased. *See State v. Tingdale*, 117 Wn.2d 595, 601, 817 P.2d 850 (1991) ("A juror's acquaintance with a party, by itself, is not grounds for a challenge for cause."). The same is true with juror 9. Mr. Garoutte's real complaint appears to be his view that he was deprived of an opportunity to explore the possibility of bias through voir dire. A trial court's abuse of its discretion over the scope and content of voir dire that substantially prejudices the rights of an accused implicates the constitutional right to fair trial and can be addressed on appeal. *State v. Davis*, 141 Wn.2d 798, 826, 10 P.3d 977 (2000).

Here, however, the trial court is not accused of limiting the scope and content of voir dire. As the trial court noted, if the defense thought that a prospective juror's acquaintance with the trial judge could give rise to bias, it could have explored that

8

during voir dire. But ordinarily, a juror's acquaintance with the judge should not cut in favor of one party or the other. As the State points out, a trial judge is not a party to the case, does not provide testimony, strives for neutrality, and even instructs the jury, as the trial court did here:

> Our state constitution prohibits a trial judge from making a comment on the evidence. It would be improper for me to express, by words or conduct, my personal opinion about the value of testimony or other evidence. I have not intentionally done this. If it appeared to you that I have indicated my personal opinion in any way, either during trial or in giving these instructions, you must disregard this entirely.

RP at 277.

Appellate courts review a trial court's decision whether to remove a juror for an abuse of discretion. *State v. Elmore*, 155 Wn.2d 758, 768, 123 P.3d 72 (2005). Because no bias is demonstrated, the trial court did not abuse its discretion. Since a motion for a mistrial should be granted "only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly," Mr. Garoutte's motion for mistrial was properly denied as well. *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996) (noting a trial court is in the best position to discern prejudice).

The trial court was also in no way responsible for the delayed revelation that juror 8 was a neighbor of Ms. Webb. In the case of juror 8, not only was Mr. Garoutte free to explore potential jurors' relationships with witnesses, but jurors were actually provided with Ms. Webb's name and asked to indicate if they knew her—juror 8 either didn't

9

know Ms. Webb, didn't know her by name, or misled the court as well as the lawyers. Misconduct can arise where a juror fails to speak during voir dire regarding a material fact. *Kuhn*, 155 Wn. App. at 573. But to complain of juror misconduct, "a party must show the juror failed to answer honestly where a correct response would have provided a valid basis for a challenge for cause." *Id.* Mr. Garoutte does not allege misconduct nor show that a correct response would have supported a challenge for cause. In any event, the trial court afforded Mr. Garoutte the opportunity to examine juror 8 and he declined. Any challenge was waived. *See State v. Clark*, 34 Wash. 485, 492, 76 P. 98 (1904) (finding no error where the appellant had the opportunity to examine jurors but failed or refused to do so).

## II. Evidentiary error

Mr. Garoutte next argues that the trial court erred in admitting evidence of Mr. Garoutte's January 18, 2014 arrest. He contends the evidence was irrelevant and that any limited relevance it might have had was outweighed by its unduly prejudicial character. He argues that admission of the evidence was not harmless because the evidence that Mr. Garoutte was aware of his obligation to appear at an omnibus hearing on October 8 was not strong, since his signature did not appear on the August 20 order setting conditions for release.

Appellate courts review a trial court's decision regarding evidence admissibility for an abuse of discretion. *State v. Aguilar*, 153 Wn. App. 265, 273, 223 P.3d 1158

10

(2009). Only relevant evidence is admissible at trial. ER 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. "The threshold to admit relevant evidence is very low[;] [e]ven minimally relevant evidence is admissible." *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403.

To prove the crime of bail jumping, the State had to prove that Mr. Garoutte had knowledge of the requirement that he appear at the omnibus hearing on October 8 and failed to appear as required. RCW 9A.76.170(1).

The relevance of Mr. Garoutte's arrest in January 2014 advanced by the State was that Mr. Garoutte's last appearance on the possession of a controlled substance charge had been on August 20—five months earlier—and a reasonable person charged with such a crime would have realized well before January 18 that he must have missed a court appearance. As the trial court noted:

> Well, it seems to me if he's gone for four months and he makes no attempt to get back in front of the court, which I think is a rational inference from what happened here, I think that supports the notion that his failure to appear back before the court is not simply because he didn't know what date, because a reasonable person under the circumstances would have made some inquiry within four months, and after the trial date passes, I think that supports that notion.

RP at 236. We agree with the State and the trial court that the evidence was relevant.

11

Mr. Garoutte also argues that any relevance of the arrest was outweighed by unfair prejudice, but without identifying the unfair prejudice. The event occurring during the arrest that principally concerned Mr. Garoutte in objecting was that he gave police a false name at the time of his arrest—evidence that *was* excluded by the trial court. Given the charge of bail jumping, evidence that a warrant issued and that Mr. Garoutte was arrested is unsurprising and is not unduly prejudicial. And given that the August 20 order setting conditions of release was unsigned by Mr. Garoutte, the probative value of evidence that the State arrested him to obtain his seriously belated appearance on the controlled substance charge outweighed whatever small stigma might be associated with arrest.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Garoutte raises two. He argues that his right to a speedy trial under CrR 3.3 and the Washington Constitution was violated where the 60-day speedy trial period expired on March 21, 2014, without trial. He argues that while the trial court allowed the State to release him in order to extend his speedy trial period, it did so too late, and alternatively abused its discretion in doing so because there was no good cause to continue the trial.

He also argues that the information filed on the bail jumping charge is insufficient where it identifies only the cause number of the case in which he had failed to appear without identifying the crime charged in that criminal case. We address the issues in turn.

12

*Speedy trial.* The Sixth Amendment of the United States Constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to a speedy trial. *State v. Saunders*, 153 Wn. App. 209, 216, 220 P.3d 1238 (2009). But CrR 3.3(b)(1)(i)'s requirement of trial within 60 days when the defendant is in custody "'is not a constitutional mandate.'" *Id.* at 216-17 (quoting *State v. Carson*, 128 Wn.2d 805, 821, 912 P.2d 1016 (1996)). Pretrial release decisions are reviewed for an abuse of discretion. *State v. Johnson*, 105 Wn.2d 92, 96, 711 P.2d 1017 (1986).

We are unable to address Mr. Garoutte's contention that he was in custody for longer than 60 days without trial because the record on appeal does not contain any of the records necessary to evaluate a speedy trial issue. Mr. Garoutte attached a jail time certification to his SAG, but under RAP 10.3(a)(8) this court does not review appendix material not contained in the record. The appropriate means of raising matters requiring evidence not included in the record on appeal is through the filing of a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Turning to Mr. Garoutte's complaint about his release, *State v. Kelly*, 60 Wn. App. 921, 925, 808 P.2d 1150 (1991) addressed the issue being raised by Mr. Garoutte: "whether the trial court may release an in-custody defendant before the expiration of the 60-day speedy trial period in order to extend the time during which trial must be held." The *Kelly* court held (1) a release from custody properly extends the time for trial and (2) a judge can consider such circumstances as the trial calendar and the availability of

13

witnesses when deciding pretrial release. *Id.* at 926, 928. Given the decision in *Kelly*, the trial judge did not abuse his discretion by releasing Mr. Garoutte to extend the time for trial.

*Insufficient information.* "An information must contain [a]ll essential elements of a crime." *State v. Green*, 101 Wn. App. 885, 889, 6 P.3d 53 (2000) (alteration in original) (internal quotation marks omitted) (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d (1991)). In bail jumping, the underlying offense is an essential element of the crime. *Id.*

When a charging document is challenged for the first time on appeal, as is the case here, it must be construed liberally; we need only determine if the necessary facts appear in any form in the charging document. *State v. Williams*, 162 Wn.2d 177, 185, 170 P.3d 30 (2007). In this case, the State's amended information, filed in Grant County Superior Court Cause No. 13-1-00420-1, charged the underlying crime, possession of methamphetamine, as count one. It charged bail jumping as count two, stating that the charge was based on his "fail[ure] to appear . . . in which a Class B or Class C felony has been filed, to-wit: Grant County Superior Court [c]ause [n]o. 13-1-00420-1; contrary to Revised Code of Washington 9A.76.170." Clerk's Papers at 22. Here, the charging document is sufficient because, within the single amended information, the State both identified the crime of unlawful possession of a controlled substance (methamphetamine) and alleged a corresponding felony bail jumping violation. This is not a case in which

14

No. 32559-8-III
*State v. Garoutte*

Mr. Garoutte was required to search for rules, regulations, or a case file in order to discover the underlying charge. It is plain from page two of the amended information that the underlying offense appears on page one.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Siddoway, C.J._
Siddoway, C.J.

WE CONCUR:

_Brown, J.P.T._
Brown, J.*

_Lawrence-Berrey, J._
Lawrence-Berrey, J.

---

\* Judge Stephen M. Brown was a member of the Court of Appeals at the time argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.