IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34781-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| FERNANDO FRANCISCO, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Fernando Francisco appeals after his convictions for third degree malicious mischief—domestic violence, fourth degree assault—domestic violence, and three counts of reckless endangerment—domestic violence. He argues (1) insufficient evidence to sustain the three reckless endangerment charges, (2) prosecutorial misconduct, (3) sentencing error when setting the length of the no-contact order (NCO) beyond the maximum term of confinement, and (4) error in assessing discretionary legal financial obligations (LFOs). We reject his arguments and affirm.

FACTS

In April 2016, Monica Salazar Mendoza was driving her car with her husband, appellant Fernando Francisco, in the passenger seat. The couple's three young children were in the backseat. The couple began to argue after Francisco received a telephone call and would not tell his wife who was calling. Ms. Mendoza eventually pulled to the side of the road. Francisco hit Mendoza in the face. Mendoza pulled back on the highway and headed to Francisco's mother's house.

After arriving there, Mendoza received a text message. Francisco took the cellphone from his wife and again struck her in the face. Francisco then exited the car, climbed on its hood, and broke his wife's cellphone and front window by repeatedly smashing the former against the latter. Mendoza, still in her car, rocked it back and forth and successfully dislodged her husband from the top of it.

Francisco then grabbed a metal bar and broke the rear window of Mendoza's car where his three children still sat. The children screamed as they were showered by pieces of broken glass. Mendoza got out of her car and the two continued arguing. Francisco then punched his wife several times in the head and face with a closed fist. Mendoza's face was bloodied by these blows. Francisco eventually pinned Mendoza to the ground.

Around this time, Francisco's mother assisted the terrified children into her house. Francisco's mother did not see her son hit Mendoza or see what caused Mendoza's face to become bloodied. She later noticed a mark on her son's back. Although she did not know what caused the mark, she speculated at trial that it could have been caused by a stick. According to Francisco's mother, the two were arguing because her son wanted to leave in his car but Mendoza would not give her son his car keys. Between her son pinning Mendoza and her own efforts, she pried her son's keys out of Mendoza's hand.

Francisco then fled in his car. Mendoza retrieved her children and then drove her car to a nearby house and called 911. Police arrived soon thereafter and observed a bloodied Mendoza.

The State charged Francisco with second degree malicious mischief, a class C felony. That charge was based on the aggregate damage to Mendoza's windshield and cellphone. The State also charged Francisco with various other offenses, including fourth degree assault—domestic violence against Mendoza, and three counts of reckless endangerment—domestic violence against his three children.

At trial, Francisco asserted a claim of self-defense. He also introduced evidence that the back car window was composed of safety glass, arguing that when safety glass breaks the pieces are not sharp like regular broken glass.

In closing argument, the prosecutor acknowledged that the State had the burden to disprove self-defense beyond a reasonable doubt. He then stated that to find self-defense, a jury must find that the defendant reasonably believed he was about to be injured. He went on to say, "There's no evidence about what [Francisco] believed. No evidence at all about what he believed." Report of Proceedings (RP) (Sept. 22, 2016 & Oct. 4, 2016) at 41.

A jury found Francisco guilty of five misdemeanors: third degree malicious mischief—domestic violence, fourth degree assault—domestic violence, and three counts of reckless endangerment—domestic violence. The court sentenced Francisco to 364 days with 94 days suspended.[1] The court also imposed a two-year NCO with respect to Mendoza. Francisco did not object to the term of the NCO.

The court also inquired into Francisco's ability to pay LFOs. The court asked Francisco about his employment history, whether he would regain employment following release from jail, his income, his assets, his number of dependents, and his child support obligations. Francisco stated that he believed he would be taken back by his employer when released from jail and that he earned approximately $2,000 to $2,500 per month.

---

[1] The court did not specify the term or conditions of the suspended sentence. Neither party has raised this as an issue for review.

4

The court reduced Francisco's obligation to pay for his wife's medical bills and capped

Francisco's total per diem incarceration fees at $500. The court also required Francisco

to pay $300 toward his court-appointed attorney fees, and $250 for the jury fee.

ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Francisco argues that the evidence was insufficient to support the three convictions

of reckless endangerment with respect to his children. He claims that because the

window was made of safety glass, the evidence did not support that his act of breaking

the rear window created a considerable risk of death or serious physical pain or injury to

his children.

In a criminal case, the State must provide sufficient evidence to prove each

element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). When a defendant challenges the

sufficiency of the evidence, the proper inquiry is "whether, after viewing the evidence in

the light most favorable to the State, any rational trier of fact could have found guilt

beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068

(1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the

State and interpreted most strongly against the defendant." *Id.* Furthermore, "[a] claim of

5

insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.* In a challenge to the sufficiency of the evidence, circumstantial evidence and direct evidence carry equal weight. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). This court's role is not to reweigh the evidence and substitute its judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality opinion). There is sufficient evidence to support a conviction "when viewed in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Aguilar*, 153 Wn. App. 265, 275-76, 223 P.3d 1158 (2009).

Under RCW 9A.36.050(1), "[a] person is guilty of reckless endangerment when he or she recklessly engages in conduct not amounting to drive-by shooting but that creates a substantial risk of death or serious physical injury to another person." Francisco asserts that the substantial risk of death or serious physical injury is not supported by substantial evidence. We disagree.

Here, there was sufficient evidence for a rational trier of fact to find a substantial risk of serious physical injury beyond a reasonable doubt. In at least two ways, each of the children sitting in the back seat of the car could have been seriously injured when Francisco shattered the back window with the metal bar. First, a piece of flying glass

6

easily could have gone into a child's eyes, causing permanent eye damage.  Second, the

metal bar easily could have pierced the glass and struck a child in the head, causing

severe injury.  For these reasons, we hold that sufficient evidence supports the

convictions for the crime of reckless endangerment—domestic violence.

>    B.    NO PROSECUTORIAL MISCONDUCT

Francisco first argues that the prosecutor committed misconduct by shifting the

burden of proof on his claim of self-defense.

"To prevail on a claim of prosecutorial misconduct, the defendant must establish

that the prosecutor's conduct was both improper and prejudicial in the context of the

entire record and the circumstances at trial." *State v. Thorgerson*, 172 Wn.2d 438, 442,

258 P.3d 43 (2011) (internal quotation marks omitted) (quoting *State v. Magers*, 164

Wn.2d 174, 191, 189 P.3d 126 (2008)).

>    In closing, the prosecutor argued:

> [T]his is self-defense. . . .  I've got to disprove this beyond a reasonable
> doubt, . . . that there's self-defense. . . .  The use of force is okay if it's used
> by a person who reasonably believes he's about to be injured. . . .  [A]nd
> they can't use any more force than necessary.  Okay, here's one thing we
> have no evidence about and that is that for there to be self-defense, you
> have to be able to find that—that he believed he's about to be injured.
> What's the evidence of that?  There's no evidence about what he believed.
> No evidence at all about what he believed.  I would suggest that you stop
> right there.  You know, if you want to go—if you want to go a step
> further—and there's no reason why you should.  I think you'd just have to

speculate.  I would argue to you you'd just have to speculate in order to—to
say that he believed he was about to be injured because we don't know what
he believed.  No evidence about that whatsoever about what he really
actually believed—what was in his mind at that time.

RP (Sept. 22, 2016 & Oct. 4, 2016) at 41-42.  Later, in rebuttal, the prosecutor argued:

And once again, no evidence that he actually believed that he was going to
be harmed.  No evidence of that at all.  It's just a distraction I would suggest
to you. It's a—you'd have to speculate to be able—to find self-defense in
this case.

RP (Sept. 22, 2016 & Oct. 4, 2016) at 57.

To obtain a jury instruction on self-defense, the defendant must produce some

evidence demonstrating self-defense.  *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d

1237 (1997).  Once the defendant produces some evidence, the burden shifts to the State

to disprove self-defense beyond a reasonable doubt.  *Id.*  "The mere mention that defense

evidence is lacking does not constitute prosecutorial misconduct or shift the burden of

proof to the defense."  *State v. Jackson*, 150 Wn. App. 877, 885-86, 209 P.3d 553 (2009).

In the context of the entire record, the prosecutor's statements in closing did not

improperly shift the burden of proof to the defendant.  Here, the prosecutor explicitly

acknowledged that the State carried the burden to disprove the claim of self-defense

beyond a reasonable doubt.

Francisco relies on *State v. Toth*, 152 Wn. App. 610, 217 P.3d 377 (2009). There, we held that the State improperly shifted the burden to the defendant in a felony driving under the influence trial by stating that the defendant should have produced corroborating evidence by calling a specific witness to testify. *Id.* at 615. Contrary to the State's comments in *Toth*, here the prosecutor commented that the defendant's evidence of self-defense was lacking.

Francisco next argues that the prosecutor committed misconduct by commenting on his Fifth Amendment right not to testify at trial.

The test to determine if a defendant's Fifth Amendment to the United States Constitution right has been violated is whether the prosecutor's statement was of such character that the jury would naturally and necessarily accept it as a comment on the defendant's failure to testify. *State v. Ramirez*, 49 Wn. App. 332, 336, 742 P.2d 726 (1987). "The prosecutor may state that certain testimony is undenied, without reference to who could have denied it." *Id.* Furthermore, the prosecutor may comment that the evidence is undisputed when the comments are so brief and subtle that they do not emphasize the defendant's silence. *Id.*

When the defendant fails to object to the prosecutor's conduct at trial, it will only constitute prosecutorial misconduct if the remark is "so flagrant and ill-intentioned that it

9

evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *State v. Stenson*, 132 Wn.2d 668, 726-27, 940 P.2d 1239 (1997).

Here, an argument can be made that the prosecutor's statements are sufficiently flagrant and ill-intentioned to meet this high standard. Five times the prosecutor emphasized that there was no evidence of what Francisco actually believed. Only Francisco could testify what he believed. The State does not explain how the trial court could have admonished the jury to sufficiently neutralize these improper and repeated statements. On the other hand, an argument can be made that the defense itself required testimony from the defendant. Viewed in this context, the prosecutor's repeated statements were proper.

Even if we assume the statements were improper, we conclude that Francisco has failed to establish that the prosecutor's statements were prejudicial. Here, there simply was no evidence that Francisco struck Mendoza multiple times in the face because he reasonably feared for his own safety. Contrary to Francisco's arguments, there is no evidence that he hit Mendoza because Mendoza had rocked him off the car, or because Mendoza had pushed Francisco's mother, or because Mendoza was armed with a baseball

bat.[2]  Instead, the evidence shows that Francisco struck Mendoza in the face multiple

times because he wanted Mendoza to give him the car keys so he could flee.  In the

context of the entire record, we cannot conclude that the prosecutor's arguably improper

statements were prejudicial.

C.      THE TWO-YEAR NCO WAS AUTHORIZED BY RCW 3.66.068

Citing *State v. Armendariz*, 160 Wn.2d 106, 120, 156 P.3d 201 (2007), Francisco

argues that the trial court erred when it imposed an NCO beyond one year, the maximum

term of his sentence.[3]  *Armendariz* is inapposite.  The holding there was based on the

court's construction of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW.

Here, the trial court did not sentence Francisco under the SRA.  Francisco's convictions

all involved nonfelonies.

RCW 3.66.068(1) provides, in relevant part:

A court has continuing jurisdiction and authority to suspend the execution
of all or any part of its sentence upon stated terms . . . for a period not to
exceed:

---

[2] Francisco's mother testified that *after* her son fled, Mendoza "grabbed [her] and
pushed [her]."  RP (Sept. 19-21, 2016) at 138.  She also testified that her son told her
Mendoza "wanted to hit [his] car with [a] bat."  RP (Sept. 19-21, 2016) at 143.  She did
not testify that Mendoza hit her son or threatened to hit her son with a bat.

[3] The State contends that Francisco may not raise this claim of error for the first
time on appeal.  We disagree.  Illegal or erroneous sentences can be challenged for the
first time on appeal.  *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008).

11

> (a) Five years after imposition of sentence for a defendant sentenced for a domestic violence offense . . . .

RCW 3.66.068(5) defines "domestic violence offense" as a "crime listed in RCW 10.99.020 that is not a felony offense." RCW 10.99.020(5) provides:

> "Domestic violence" includes . . . the following crimes when committed by one family or household member against another:
> . . . .
> (d) Assault in the fourth degree.

Chapter 3.66 RCW concerns the jurisdiction and venue of district courts. It is therefore fair to construe RCW 3.66.068 as applying specifically to district courts. Construed in this manner, RCW 3.66.068 gives district courts authority to suspend, upon stated terms, the sentence of a person convicted of a nonfelony domestic violence offense for up to five years. A common term or condition of suspension is for the defendant to comply with an NCO. In this manner, a district court has authority to enter an NCO for up to five years to protect victims of domestic violence.

We can think of no reason for a superior court to have less authority than a district court relative to sentencing defendants convicted of nonfelony offenses. We note that RCW 2.08.010 empowers superior courts with original jurisdiction over several matters, including "all cases of misdemeanor not otherwise provided for by law." Here, the superior court had original jurisdiction over the misdemeanor offenses because they were

12

charged with a felony offense, thus elevating the prosecution of all offenses to superior

court. Given the authority granted in RCW 2.08.010, we construe RCW 3.66.068(1)(a) as

giving superior courts the same authority as district courts when imposing nonfelony

sentences.

Although the superior court had authority to suspend a portion of the sentence and

retain jurisdiction for up to five years, it is unclear whether the trial court retained

jurisdiction to enforce the NCO here. *Compare* RCW 9.95.210(1)(a) *with State v.*

*Granath*, 200 Wn. App. 26, 401 P.3d 405, *review granted*, 189 Wn.2d 1009, 402 P.3d

823 (2017). That question is not before us, and we decline to address it.

D.      DECLINE REVIEW OF THIS UNPRESERVED CLAIM OF LFO ERROR

Francisco contends the trial court conducted an insufficient inquiry into his ability

to pay discretionary LFOs because the inquiry failed to disclose that he had over $15,000

in prior LFOs.

Francisco failed to object to the trial court's imposition of discretionary LFOs. In

*State v. Blazina*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015), the court recognized that a

defendant who makes no objection to the imposition of discretionary LFOs at sentencing

is not automatically entitled to review. One purpose for requiring an objection is to

inform the trial court of legal error at a time when the error might be corrected. *Id.* at

832-33.  Each court must exercise its discretion whether to review an unpreserved claim of LFO error.  *Id.* at 835.

Here, the trial court asked Francisco about his financial status, including his employment history, whether he could return to his job following release from jail, his income, his assets, the number of his dependents, and his child support obligations. Francisco told the trial court that he thought he could return to his previous job when released from jail and that he earned approximately $2,000 to $2,500 per month.  The trial court then thoughtfully reduced various obligations and limited others.  We do not fault the trial court for failing to ask more extensive questions.  After these initial questions, we believe it was incumbent on Francisco to speak up.  Because the trial court conducted a reasonable inquiry and made thoughtful reductions to the LFOs proposed by the State, we exercise our discretion and decline to review this unpreserved claim of LFO error.

APPELLATE COSTS

Francisco requests that we deny the State an award of appellate costs in the event the State substantially prevails.  The State represents it will not seek costs.  We hold it to its representation.

No. 34781-8-III
*State v. Francisco*


Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Siddoway, J.

No. 34781-8-III
*State v. Francisco*

No. 34781-8-III

SIDDOWAY, J. (concurring in the result) — I believe the prosecutor committed misconduct by making statements that jurors could reasonably understand as meaning that *direct* evidence of Mr. Francisco's state of mind—evidence only he could provide—was required and missing in his case. But it cannot reasonably be argued that the prosecutor's statements were sufficiently flagrant and ill-intentioned to meet the heightened standard of review that applies when there was no objection at trial.

This is not a case in which "no curative instruction would have obviated any prejudicial effect on the jury." *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011). Jurors had received instruction that Mr. Francisco was "not required to testify" and they "may not use the fact that [he] has not testified to infer guilt or to prejudice him in any way." Clerk's Papers (CP) at 100 (Jury Instruction 5). They had been instructed on the difference between direct and circumstantial evidence and that one was not necessarily more or less valuable than the other. CP at 98 (Jury Instruction 3). Had Mr. Francisco's lawyer objected, the trial court could have reminded jurors or clarified the fact that the State was required to disprove self-defense from the evidence presented—not as an inference from the fact that Mr. Francisco did not personally testify to his state of mind. For these reasons, I concur in the result.

_Siddoway, J._
Siddoway, J.

1