[No. 16410–4–I.   Division One.   August 17, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSE
SALAVA RAMIREZ, *Appellant.*

*Julie A. Kesler* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Danko, Deputy,* for respondent.

WEBSTER, J.—Appellant Jose Ramirez appeals from his judgment and sentence entered after a jury found him guilty of second degree murder. RCW 9A.32.050. Ramirez contends that he is entitled to a new trial based on prosecutorial misconduct during closing arguments. Although the deputy prosecutor's remarks exceeded the bounds of acceptable prosecutorial advocacy, we find the evidence of Ramirez's guilt overwhelming and, therefore, we affirm.

## FACTS

On September 20, 1984, the dead body of Florine Ramirez was discovered by Paula Rohr in the bathroom of Rohr's apartment. Florine had been stabbed twice: one wound had nearly severed her trachea; the other wound had severed her spinal cord. Florine's husband, Jose Ramirez, was arrested in connection with her death and later charged with second degree murder.

At trial Rohr, who was 77 years old, testified that she had been good friends with both Florine and Jose. At one time she and the Ramirezes had lived in the same apartment building, which is where she met Florine. After the Ramirezes moved from Seattle to North Bend, Rohr and Florine still visited each other and occasionally spent the night.

Rohr said that her apartment had only one entrance and that she was the only person with a key. The main door to the building could be unlocked either by using a key or by activating the lock from a particular apartment when someone called over the intercom system. A small window located next to the kitchen could only be opened about a foot.

She testified that about 6:30 p.m. on September 20, 1984, she and Florine met Jose at a nearby restaurant. No one

had anything to eat, but Rohr had two brandies and Florine drank some beer. Florine and Jose then got into an argument relating to his naturalization and to his learning the pledge of allegiance. The couple often got into arguments. However, their conversations were difficult to understand because Florine primarily spoke English and Jose primarily spoke Spanish. Rohr did not understand Spanish.

Rohr said that the three of them left the restaurant later that evening and took a taxi to her apartment. Florine fixed some food for Jose, and Rohr watched television. When Rohr suggested that the Ramirezes stay overnight, Florine declined the invitation. Jose told Florine to hurry, saying that he did not want to miss the bus. Florine then went into the bathroom to comb her hair, and Rohr turned her attention to watching television.

Rohr said that a few minutes later she heard her front door slam and then she heard the outside door slam. However, neither Florine nor Jose had come in to say goodbye. She also noticed that Florine's purse was still lying on the couch and that the kitchen had not been cleaned up. Wondering whether the Ramirezes had left, she went to the bathroom door, knocked, and said, "Florine, are you in there? Are you in there?" Rohr then opened the door and found Florine's body lying on the floor. Rohr ran down the hall and summoned the manager, who then called the police.

A gas station attendant testified that about midnight on September 20, 1984, Jose came to his station and asked to use the telephone. Jose repeated the words "wife" and "woman" and gestured that someone's throat had been slashed. The attendant called the police.

A police officer testified that when he arrived at the gas station, Jose waved him down. Gesturing to his throat and pointing toward Rohr's apartment building, Jose then led the officer to the apartment. Additional officers arrived and searched the apartment, but found no intruders. The basement door of the apartment building was locked. No

weapon was ever found.

Jose was arrested and transported to the police department. A Breathalyzer revealed that his blood alcohol reading was .07 percent. An identification technician at the Seattle Police Department testified that he lifted five of Jose's fingerprints from Rohr's bathroom and bathroom doorknob. However, he did not know how old those fingerprints were. One officer testified that he saw no blood on Jose.

A pathologist testified that the cause of Florine's death was two stab wounds to the neck. These wounds caused considerable bleeding, but did not spurt blood. The rear stab wound nearly transected the spinal cord causing paralysis of the legs and arms.

Jose did not testify at trial. During closing arguments the defense attorney referred to a defendant's right to remain silent and discussed reasons why he may choose not to testify. On rebuttal closing the deputy prosecuting attorney stated that another reason a defendant does not testify is because he is guilty. Defense counsel's objections were overruled.

The jury found Jose guilty of second degree murder. He appeals, contending that the deputy prosecutor's remarks during closing arguments deprived him of his right to a fair trial.

### STANDARD OF REVIEW FOR PROSECUTORIAL MISCONDUCT

Ramirez's objections to the deputy prosecutor's remarks were overruled. Therefore, we first determine whether the remarks were in fact improper. If they were improper, we next consider whether there was a "'substantial likelihood'" that the comments affected the jury. *State v. Reed,* 102 Wn.2d 140, 145, 684 P.2d 699 (1984). *See State v. Pacheco,* 107 Wn.2d 59, 71, 726 P.2d 981 (1986).

### DEPUTY PROSECUTOR'S CLOSING REMARKS

Ramirez challenges the following comment made by the deputy prosecutor in her rebuttal closing remarks:

> She [defense counsel] lists several hypothetical questions and hypothetical situations why a person does not want to testify, and didn't tell you that was what happened in this case because that is hypothetical. She told you hypothetical reasons why a person would not want to testify. *She left out one reason, a hypothetical reason and the only other hypothetical reason she left out is a person is guilty* and, if that person would take the stand and tell you what happened, you would not only be convinced beyond a reasonable doubt but convinced beyond all doubt of what happened that night.

(Italics ours.)

At the close of her rebuttal the deputy prosecutor again referred to the defendant's right to remain silent:

> The defendant has a constitutional right to a trial, and *the defendant has a constitutional right to remain silent,* but just because he does not exercise that right doesn't mean there is no issue. This is a perfect example there is an issue, and the State has proven it beyond a reasonable doubt.

(Italics ours.)

█ Comment on the refusal to testify is a remnant of the "inquisitorial system of criminal justice". *Murphy v. Waterfront Comm'n,* 378 U.S. 52, 55, 12 L. Ed. 2d 678, 84 S. Ct. 1594 (1983). The test employed to determine if a defendant's Fifth Amendment rights have been violated is whether the prosecutor's statement was of such character that the jury would "naturally and necessarily accept it as a comment on the defendant's failure to testify." *State v. Crawford,* 21 Wn. App. 146, 152, 584 P.2d 442 (1978), *quoted in State v. Sargent,* 40 Wn. App. 340, 346, 698 P.2d 598 (1985). The prosecutor may state that certain testimony is undenied, without reference to who could have denied it. *State v. Ashby,* 77 Wn.2d 33, 37–38, 459 P.2d 403 (1969). The prosecutor may also comment that evidence is undisputed when these comments are so brief and so subtle that they do not emphasize the defendant's testimonial silence. *Crawford,* at 152.

In *Sargent* the court found impermissible the following comment by the prosecutor:

Now, if there is someone else in this world who Lori Sargent was a target for, you better believe you would have heard about it. If someone else had the kind of motive that this man had to kill her, you better believe the defense would have found out about it, tried to find out about it,—

[Defense counsel]: Objection, your Honor.

THE COURT: Overruled, it's closing argument.

[Deputy prosecutor]: —and said something about it. The burden never shifts from the state to prove that the defendant is guilty, don't get me wrong. But if *you are on trial* for murder *and you know* that someone else has a motive as strong as yours to have killed that person in the way that this was done, *you're going to tell somebody about that.*

*Sargent,* at 346.

Similarly, the deputy prosecutor's comments here would "naturally and necessarily" cause the jury to focus on Ramirez's failure to testify. Despite the use of hypothetical terms, her comments were not subtle; it is clear that she was referring to Jose Ramirez. Notwithstanding the impropriety of these comments, they must be weighed against defense counsel's own closing remarks.

### DEFENSE COUNSEL'S CLOSING REMARKS

The deputy prosecutor's rebuttal references to Ramirez's silence must be considered in light of defense counsel's "opening salvo." *United States v. Young,* 470 U.S. 1, 12, 84 L. Ed. 2d 1, 105 S. Ct. 1038 (1985). In *Young* the Supreme Court held that whether or not a defendant has been unfairly prejudiced during closing arguments must be determined from the context in which the statements were made. In this regard, defense counsel's conduct, as well as the nature of the prosecutor's response, is relevant. 470 U.S. at 12.

The State argues that its comments on the defendant's failure to testify were proper rebuttal argument considering defense counsel's lengthy reference to reasons that Ramirez claimed the Fifth Amendment privilege. Defense counsel's comments follow:

[Defense counsel] The most important instruction in this case is instruction No. 4. Instruction No. 4 is very short and very simple and it outlines probably the most important right that any criminal defendant has in the United States. *That instruction states the fact that the defendant has not testified may not be considered by you in arriving at your verdict.*

The first thing an officer states, when he arrests a person, is that, "You have the right to remain silent." *The fifth amendment to the constitution says a human being does not have to take the stand.*

. . .

*I am sure each of you went home and thought the defendant didn't take the stand. He must be hiding something.* This instruction, instruction No. 4, says you can't think that. It is something everybody wants to think. It is something you cannot do. It is something you must very strongly avoid doing.

. . .

*First of all, a person might not want to testify, they might be protecting themselves and might want to protect someone else.* That someone else might be living and they might not. That someone else might be dead. They would not want their past dredged up.

. . .

Think of that term "accused." Instruction No. 21 says this is merely an accusation. Think about how someone feels when they are charged with a crime. *So we might not take the stand because some attorney says, "Listen, I am your counsel and I am advising you, and I know this and I have been through it, and you follow my advise [sic]. Don't take the stand."* People have attorneys because they don't know what they are doing in the court room, and they follow their attorney's advice. . . .

. . . It is not so bad when your attorney stands over here and asks a few questions and you give a few answers, that's okay. But it is the thought your attorney goes over there and sits down 20, 25 feet away, and then comes the prosecutor between you and your attorney and you have no idea what that attorney is going to ask, and *there are 12 people in the jury box and they are staring at you, and you are the center of all that attention, and you are the accused, there is a black cloud hanging*

*overhead and then somebody says, "You don't have to go up there, if you don't want."*

(Italics ours.)

Indeed, defense counsel's comments unduly emphasized Ramirez's silence. After making a tactical decision to keep him off the stand, she then proceeded to justify his failure to testify. However, considering the seriousness of the constitutional rights at issue, we cannot say that defense counsel's remarks "invited" the deputy prosecutor's comments. The prosecutor's proper response was an appropriate objection, not similarly improper argument.

### OVERWHELMING EVIDENCE

■ Drawing attention to the defendant's failure to testify is constitutional error. *Griffin v. California,* 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229, *reh'g denied,* 381 U.S. 957 (1965); *State v. Messinger,* 8 Wn. App. 829, 509 P.2d 382, *review denied,* 82 Wn.2d 1010 (1973), *cert. denied,* 415 U.S. 926 (1974). Constitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless. *State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied,* 106 S. Ct. 1208 (1986). In Washington the "overwhelming untainted evidence" test is used to determine whether constitutional error is harmless. Under this test the appellate court looks only at the untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt. *Guloy,* at 426.

Applying this test, we find that the State has met its burden. Notwithstanding the unwarranted prosecutorial remarks, Ramirez's conviction should stand based upon the following evidence: (1) no one except Rohr and the Ramirezes were present in the apartment on the evening of the murder; (2) access to the apartment was impossible without a key or activation of the buzzer; (3) Rohr heard the inner door slam and the outer door slam knowing that only three persons were in the apartment; (4) Jose did not inform Rohr of the stabbing prior to seeking help; (5) Jose knew how Florine had died; he gestured to both the gas

station attendant and the police that her throat had been slashed; (6) Jose and Florine had had an argument at the restaurant; and (7) although there was no blood on Jose's clothing, the testimony showed that Florine's wounds had not spurted blood and that she had fallen to the floor without a struggle.

The evidence of Ramirez's guilt was overwhelming. We affirm the trial court.

PEKELIS and MUNSON, JJ., concur.