# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51837-6-II |
| Respondent, | |
| v. | |
| THOMAS ARTHUR BRADSHAW, A/K/A TOM E. PRADIA, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Thomas Arthur Bradshaw appeals his conviction for possession of a stolen vehicle. Bradshaw argues that the prosecutor committed misconduct by (1) impermissibly commenting on his silence, (2) misstating the concept of reasonable doubt, and (3) misstating the State's burden to prove knowledge. Bradshaw makes additional claims of instructional error and ineffective assistance of counsel.

We hold that the prosecutor committed misconduct by repeatedly commenting on Bradshaw's silence and by repeatedly misstating the State's burden to prove knowledge. We hold that the misconduct was flagrant and ill intentioned and the cumulative effect of repeated instances of misconduct could not have been obviated by a curative instruction. Thus, we reverse and remand for a new trial. In light of our resolution of Bradshaw's prosecutorial misconduct claim, we do not reach his claims of instructional error or ineffective assistance of counsel.

FACTS

On July 18, 2017, Aberdeen Police Officer Cody Blodgett was patrolling within the county limits of Grays Harbor, Washington. Blodgett was traveling eastbound and saw Bradshaw drive past him traveling westbound. Blodgett recognized Bradshaw as the driver of the car. Blodgett also observed one female and two other male passengers in the car with Bradshaw. As their cars crossed paths, Blodgett saw Bradshaw turn his face away from the patrol car. Blodgett found this suspicious and entered the license plate number on Bradshaw's car into his computer. Blodgett learned that the car had been reported stolen a few days prior.

Blodgett turned his patrol car around and found the car parked about 100 yards away from where he made the turn, next to a homeless camp that was adjacent to a river. When he arrived, Bradshaw was not in the car. However, the female passenger who Blodgett saw in the car with Bradshaw was still in the car, and she had the keys. Blodgett was advised that the two male passengers had left the car, possibly in different directions. Blodgett saw one male passenger creep up from the river and get into the backseat of a different car.

Blodgett called Aberdeen Police Officer Jason Capps for assistance. Capps searched the surrounding area for Bradshaw, including the homeless camp. Capps knocked on half a dozen tents before he noticed a tent with a lock on it. Capps approached the tent and asked an individual inside the tent why she had a lock on the entrance. The individual told Capps that she had a lock to keep a cat inside the tent. Capps heard a dog barking from inside the tent. From a gap between the tent's zippers, Capps observed Bradshaw inside the tent. Capps ordered Bradshaw to come

out of the tent, and he complied. Capps arrested Bradshaw. The State charged Bradshaw with one count of possession of a stolen vehicle.[1]

Bradshaw's case proceeded to trial. Bradshaw rested his case without presenting any witnesses or introducing evidence. Closing arguments focused on whether the State had proved beyond a reasonable doubt that Bradshaw knew that the car he possessed was stolen. The State made the following argument without objection from defense counsel:

> [T]he one place that gets a little muddy is this issue of knowledge. Whether or not the defendant . . . knew or *reasonably should have known* that the car he was driving on July 18th was stolen.

Verbatim Report of Proceedings (VRP) (Dec. 13, 2017) at 55 (emphasis added).

> [I]t's going to be your job as the jurors, think about the simple facts of what happened and use your common sense, make some inferences and determine from that, did the State prove to you that Mr. Bradshaw [knew] it was stolen or *reasonably should have known* that that car was stolen.

*Id.* at 58 (emphasis added).

> I put it to you that absent any other evidence, the reasonable inference to make is that Mr. Bradshaw . . . *would have known* that he didn't have [the] right to that car because there was no paperwork with his name on it.

*Id.* at 61 (emphasis added).

> Ultimately, you get to decide whether that's reasonable, but there's no other explanation than that. And the explanation that he ran because he knew or *should have known* the car was stolen is perfectly rational and reasonable and logical.

*Id.* at 61-62 (emphasis added).

> Now, Mr. Bradshaw has the absolute fifth amendment right not to testify. You saw it in the jury instructions, the fact that he didn't testify cannot be used against him. And that leaves you with the evidence that the State has presented.

---

[1] RCW 9A.56.068 refers to this crime as both "possession of a stolen vehicle" (subsection (1)) and "[p]ossession of a stolen motor vehicle" (subsection (2)).

> You get to draw the inferences based on that, absent any other explanation. The evidence that you have explains his behavior, explains why he ran. Again, he doesn't have to testify. He doesn't - we can't know necessarily what is in his head, because he doesn't have to tell you what he was thinking. He doesn't have to tell you what he knew or didn't know. And so you get to determine - as the jurors, you're in a unique situation to try to figure out what to do or what a reasonable person in his situation would have done, given all of the context, given all of the evidence. It's almost like you guys get to be mind readers. What did he know? What *should he have known*? And what does the State show beyond a reasonable doubt that he would have known on the 18th when Officer Blodgett turned around. He knew he was in trouble because he knew that car was stolen.

*Id.* at 63 (emphasis added).

In his closing argument, Bradshaw emphasized that the State had not proved Bradshaw knew the car was stolen. His attorney stressed that it is "mere speculation" as to why Bradshaw turned away from Blodgett when their cars crossed paths and whether Bradshaw fled the car after he saw Blodgett. *Id.* at 64. Bradshaw argued that because the State's case revolved around mere speculation, the State had not proved the charge beyond a reasonable doubt.

During the prosecutor's rebuttal argument, the prosecutor responded to Bradshaw's claim that the State's case revolved around speculation and explained the concept of a reasonable doubt to the jury:

> We have to speculate because *we can't get inside Mr. Bradshaw's head*. But enough of his actions that day line up that it isn't just mere speculation that he knew that it was stolen, that he ran for that reason.

*Id.* at 65 (emphasis added).

> And I do want to draw your attention to the jury instruction as to what is a reasonable doubt. It is doubt for which a reason exists. It is contained in Instruction Number 9. A reasonable doubt is a doubt for which a reason exists. Do you have a reason to doubt that he knew that it was stolen? Now, the State, trying to carry its burden, has presented to you circumstantial evidence. And, in fact, direct evidence given Officer Blodgett's direct testimony of what he directly observed the defendant do, we've given you, I put it to you, enough circumstantial evidence to believe beyond a reasonable doubt that he knew it was stolen? *Nothing has*

4

*contradicted the testimony you've heard.* It's up to you to make the inferences as to whether or not you believe that he knew it. Is there a reason to doubt that he knew it was stolen. There's been no evidence to suggest anything, that he didn't know that.

Also, as the last sentence of the jury instruction tells you, if, after such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt. An abiding belief in the truth of the charge, that means you're not going to go home and think about it and change your mind. It means you're not going to think about it a month later and think, oh, actually now that I think of it, maybe it's different. You know, when you go back there and deliberate and you make those connections between what he calls speculation and what I call circumstantial evidence, *if you don't have a reason to doubt*, you don't have reasonable doubt. If you have an abiding belief in the charge, a belief that you're not going [to] change your mind later, then you don't have reasonable doubt. If you don't have reasonable doubt, the State's carried its burden proving it to you, then - and it tells you your duty is to find the defendant guilty and I ask you to do that.

*Id.* at 66-67 (emphasis added).

Bradshaw did not object to any of the prosecutor's statements. A jury returned a verdict finding Bradshaw guilty of possession of a stolen vehicle. Bradshaw appeals.

## DISCUSSION

### I. PROSECUTORIAL MISCONDUCT

#### A. LEGAL PRINCIPLES

Prosecutorial misconduct may deprive a defendant of her or his constitutional right to a fair trial. *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984). "In a prosecutorial misconduct claim, the defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial." *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012); *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). We review the prosecutor's conduct and whether prejudice resulted therefrom "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence

addressed in the argument, and the instructions given to the jury.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

Because Bradshaw failed to object at trial, the errors he complains of are waived unless he establishes that the misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice. *Thorgerson*, 172 Wn.2d at 443. The defendant must show (1) no curative instruction would have obviated any prejudicial effect on the jury and (2) there is a substantial likelihood that the misconduct affected the jury's verdict. *Emery*, 174 Wn.2d at 761. We focus less on whether the State's misconduct was flagrant and ill intentioned and more on whether the resulting prejudice could have been cured. *Id.* at 762. "'[T]he cumulative effect of repetitive prejudicial prosecutorial misconduct may be so flagrant that no instruction or series of instructions can erase their combined prejudicial effect.'" *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 707, 286 P.3d 673 (2012) (alteration in original) (quoting *State v. Walker*, 164 Wn. App. 724, 737, 265 P.3d 191 (2011)). We ask whether "'such a feeling of prejudice [has] been engendered or located in the minds of the jury as to prevent the [defendant] from having a fair trial?'" *Emery*, 174 Wn.2d at 762 (alteration in original) (quoting *Slattery v. City of Seattle*, 169 Wash. 144, 148, 13 P.2d 464 (1932)).

B. RIGHT TO SILENCE

Bradshaw argues that during closing arguments, the prosecutor impermissibly commented on Bradshaw exercising his constitutional right not to testify because the prosecutor's statements (1) emphasized that the State's evidence was uncontradicted, (2) highlighted Bradshaw's silence, and (3) indicated that Bradshaw was the only witness who could have refuted the State's theory.

The State argues that the prosecutor's remarks were not improper because the remarks were "mere references" to Bradshaw's silence and did not invite the jury to infer guilt. Br. of Resp't at 11. We agree with Bradshaw.

The Fifth Amendment of the United States Constitution bars the State from commenting on the defendant's failure to testify at trial. *State v. Lewis*, 130 Wn.2d 700, 704-05, 927 P.2d 235 (1996). A prosecutor violates a defendant's Fifth Amendment rights if the prosecutor makes a statement "of such character that the jury would 'naturally and necessarily accept it as a comment on the defendant's failure to testify.'" *State v. Ramirez*, 49 Wn. App. 332, 336, 742 P.2d 726 (1987) (quoting *State v. Crawford*, 21 Wn. App. 146, 152, 584 P.2d 442 (1978)).

"The State may not use a defendant's constitutionally permitted silence as substantive evidence of guilt." *State v. Romero*, 113 Wn. App. 779, 787, 54 P.3d 1255 (2002). Our Supreme Court has distinguished between a "comment" on the constitutional right to remain silent and a "'mere reference'" to silence. *State v. Burke*, 163 Wn.2d 204, 216, 181 P.3d 1 (2008) (quoting *Lewis*, 130 Wn.2d at 706-07). A "comment" involves the State's use of a defendant's silence to its advantage either as substantive evidence of guilt or to invite an inference that the defendant's silence was an admission of guilt. *Id.* at 217.

At trial, a prosecutor may state that certain testimony is undenied without reference to who could have denied it. *Ramirez*, 49 Wn. App. at 336. The prosecutor may also state that evidence is undisputed, provided that he or she does not identify a nontestifying defendant as the one who could dispute it or the comments emphasize the defendant's testimonial silence. *State v. Fiallo-Lopez*, 78 Wn. App. 717, 729, 899 P.2d 1294 (1995); *Ramirez*, 49 Wn. App. at 336.

Here, the primary issue at trial and the focus during closing arguments was whether Bradshaw knew the vehicle was stolen. During the prosecutor's closing argument, he stated,

Now, Mr. Bradshaw has the absolute fifth amendment right not to testify. You saw it in the jury instructions, the fact that he didn't testify cannot be used against him. That leaves you with the evidence that the State has presented. You get to draw the inferences based on that, absent any other explanation. The evidence that you have explains his behavior, explains why he ran. Again, he doesn't have to testify. He doesn't – we can't know necessarily what is in his head, because he doesn't have to tell you what he was thinking. He doesn't have to tell you what he knew or didn't know. . . . It's almost like you guys get to be mind readers. What did he know? What *should he have known*?

VRP (Dec. 13, 2017) at 63.

And in rebuttal, the prosecutor said, "We have to speculate because we can't get inside Mr. Bradshaw's head." *Id.* at 65. The prosecutor also stated, "Nothing has contradicted the testimony you've heard," and "[t]here's been no evidence to suggest" that Bradshaw did not know the car was stolen. *Id.* at 66.

Bradshaw relies on *Fiallo-Lopez* to support his claim that the prosecutor improperly commented on his silence. 78 Wn. App. at 729. In that case, the prosecutor said during closing argument "that there was 'absolutely' no evidence to explain" Fiallo-Lopez's presence at the crime scene and "there was no attempt by the defendant to rebut the prosecution's evidence regarding his involvement" in the crime. *Id.* In finding the argument improper, the court reasoned that because there was no one other than Fiallo-Lopez who could have offered the explanation that the State demanded, the State commented on Fiallo-Lopez's right to silence. *Id.* The court relied on *Ramirez*, 49 Wn. App. at 336, and *Crawford*, 21 Wn. App. at 152, in holding that the remark was of such a character that it would necessarily be viewed by a jury as a comment on the defendant's failure to testify. *Fiallo-Lopez*, 78 Wn. App. at 728-29. "The prosecutor may say that certain

testimony is undenied as long as he or she does not refer to the person who could have denied it."
*Id*. at 729 (citing *Ramirez*, 49 Wn. App. at 336). Despite the prosecutor's improper comments, however, the court held that the error was harmless because any reasonable jury would have reached the same result absent the improper statements because the evidence of guilt was overwhelming. *Id*.

The State contends that *State v. Ashby*, 77 Wn.2d 33, 459 P.2d 403 (1969), should control our decision. In *Ashby*, the prosecutor said,

> "So I say it is not disputed that he sold those articles to the defendant, Mr. Ashby. Members of the jury, that testimony also is undisputed. . . . Has anyone disputed that particular evidence that those articles were sold to Mr. Ashby?"

*Id.* at 37.

The court affirmed the conviction after concluding these remarks did not necessarily draw the jury's attention to the fact that the defendant did not testify. *Id.* at 37-38. The court reasoned that the prosecutor's indirect comments could have applied equally to the testimony of a number of other individuals, not just the defendant's. *Id*. But the difference between this case and *Ashby* is immediately apparent: there was no other witness offered by the State who could testify about Bradshaw's knowledge of whether the car was stolen.

The prosecutor's remarks in this case are more akin to *Fiallo-Lopez* than *Ashby*, and we agree with Bradshaw that they impermissibly highlighted Bradshaw's silence. The prosecutor's remarks were improper because they implied that Bradshaw was the *only* person who could have contradicted the evidence and because they suggested that Bradshaw's decision not to testify was substantive evidence of his guilt. The prosecutor's remarks went beyond an indirect reference to Bradshaw's failure to testify deemed harmless in *Ashby* because although other witnesses may

have been able to provide the jury with circumstantial evidence of Bradshaw's knowledge, no one other than Bradshaw could have told the jury exactly what he knew or "what is in his head." VRP (Dec. 13, 2017) at 63. By arguing that Bradshaw did not contradict the State's evidence, followed by specific references to Bradshaw's mental state, the prosecutor impermissibly called the jury's attention to Bradshaw's failure to testify. These comments, followed by additional improper comments regarding what Bradshaw "knew," improperly invited the jury to infer guilt from Bradshaw's decision not to testify. *Id.*

Despite the prosecutor correctly observing that Bradshaw had the right not to testify, his repeated mention of this right could reasonably be viewed, in the context of the entire argument, as a backdoor way for the prosecutor to emphasize to the jury that Bradshaw *did not* testify. The prosecutor improperly highlighted Bradshaw's silence and asked the jury to infer guilt from Bradshaw's constitutional right to silence, which shifted the burden of proof to Bradshaw to offer the explanation the prosecutor demanded. Because the prosecutor improperly commented on Bradshaw's right not to testify and shifted the burden of proof to Bradshaw, we conclude that the prosecutor committed misconduct.

C. KNOWLEDGE

Bradshaw next argues that the prosecutor committed misconduct by misstating the State's burden to prove actual knowledge, thereby lowering the State's burden of proof and the standard upon which the jury could find Bradshaw guilty. The State does not explicitly contest that the comments Bradshaw challenges were a misstatement of the law. The State does argue that given the facts of this case, the prosecutor's statements did not mislead or permit the jury to find Bradshaw guilty based on his constructive knowledge. We agree with Bradshaw.

10

A prosecuting attorney commits misconduct by misstating the law. *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008). In order to establish unlawful possession of stolen property under RCW 9A.56.140(1), the State must prove that the accused "knowingly" received, retained, possessed, concealed, or disposed of "stolen property knowing that it has been stolen." To establish that the accused acted "knowingly," the State must prove that

> (i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
> (ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b).

During closing argument, the prosecutor mentioned several times that Bradshaw "should have known" the car was stolen:

> Whether or not the defendant . . . knew or *reasonably should have known* that the car he was driving on July 18th was stolen.

VRP (Dec. 13, 2017) at 55 (emphasis added).

> [D]id the State prove to you that Mr. Bradshaw [knew] it was stolen or *reasonably should have known* that that car was stolen.

*Id.* at 58 (emphasis added).

> And the explanation that he ran because he knew or *should have known* the car was stolen is perfectly rational and reasonable and logical.

*Id.* at 62 (emphasis added).

> What did he know? What *should he have known*?

*Id.* at 63 (emphasis added).

"Although subtle, the distinction between finding actual knowledge through circumstantial evidence and finding knowledge because the defendant 'should have known' is critical." *State v.*

11

*Allen*, 182 Wn.2d 364, 374, 341 P.3d 268 (2015). The law does not allow the jury to consider what a reasonable person in the same situation would have known or "'should have known.'" *Id.* "To pass constitutional muster, the jury must find actual knowledge but may make such a finding with circumstantial evidence." *Id.* The jury may infer knowledge from circumstantial evidence that suggests an ordinary person would have known a fact, however the jury must find that the defendant actually knew or had subjective knowledge. *State v. Shipp*, 93 Wn.2d 510, 517, 610 P.2d 1322 (1980).

In *Allen*, the prosecutor committed misconduct in his closing argument and rebuttal argument by repeatedly stating that the defendant had "'knowledge'" if the defendant "'should have known'"[2] a specific fact. 182 Wn.2d at 371-72. Here, the State attempts to distinguish *Allen* by stating that *Allen* considered only the standard upon which the jury may convict an accomplice, and therefore its holding does not apply to the present case.

Although it is true that the defendant in *Allen* appealed his conviction as an accomplice to murder, the court did not interpret the accomplice liability statute and the court's decision did not depend on accomplice liability. 182 Wn.2d at 374. The court interpreted the "General Requirements of Culpability" statute, which sets forth levels of culpability applicable to the criminal code. RCW 9A.08.010; *Allen*, 182 Wn.2d at 374. More specifically, the court interpreted

---

[2] In *Allen*, the State conceded that the prosecutor misstated the standard upon which the jury could find the defendant had actual knowledge. 182 Wn.2d at 374. The court stated that the State's "concession is well taken and accepted." *Id.*

the standard by which the jury must find a defendant had *knowledge* of a fact, the same level of culpability that applies here.[3]  RCW 9A 56.140(1); *Allen*, 182 Wn.2d at 374.

Here, the prosecutor made identical statements to those condemned in *Allen*.  When describing the knowledge instruction, the prosecutor repeatedly used the phrase "should have known."  VRP (Dec. 13, 2017) at 58.  This phrase was a misinterpretation of Washington's culpability statute and mislead the jury into believing that Bradshaw could be found guilty if he merely should have known the car was stolen, even if he did not actually know the car was stolen. *Allen*, 182 Wn.2d at 374.

We expect prosecutors to carefully and articulately explain the legal concept of knowledge to jurors.  Even though the prosecutor briefly argued near the end of his rebuttal that the State had proven Bradshaw actually knew the car was stolen, the prosecutor repeatedly told the jury that the legal standard they were to apply was whether Bradshaw knew *or should have known* the car was stolen.  The prosecutor's repeated use of the phrase "or should have known" allowed the jury to convict Bradshaw even if it disagreed that the State had proved Bradshaw actually knew the car was stolen, but nevertheless agreed the State had proved that Bradshaw *should have known* the car was stolen.  This is an insufficient basis on which to convict.  *Id*.  These remarks were improper and a flagrant misstatement of the law, therefore we hold that the prosecutor's remarks constituted misconduct.[4]  *Warren*, 165 Wn.2d at 28.

---

[3] In *Allen*, the trial court gave the jury an identical instruction to the instruction given in this case. 182 Wn.2d at 372.

[4] Bradshaw also contends that the prosecutor impermissibly shifted the burden of proof by making a forbidden "'fill-in-the-blank'" argument.  Br. of Appellant at 13.  In light of our decision on Bradshaw's claims regarding his right to silence and the prosecutor's misstatement of the law regarding knowledge, we do not address this argument.

D. INCURABLE PREJUDICE

Bradshaw claims that reversal is required because no curative instruction could have remedied the cumulative effect of the multiple instances of flagrant prosecutorial misconduct. We agree with Bradshaw and hold that the prosecutor committed misconduct and the misconduct cumulatively caused incurable prejudice that warrants reversal.

Because Bradshaw failed to object at trial, the errors he complains of are waived unless he establishes that the misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice. *Thorgerson*, 172 Wn.2d at 443. To prevail, Bradshaw must show (1) a curative instruction would not have obviated any prejudicial effect on the jury and (2) there is a substantial likelihood that the misconduct affected the jury's verdict. *Emery*, 174 Wn.2d at 761.

The principal disputed matter at trial was whether the State established the requisite mental element for the offense, therefore what Bradshaw knew was critically important. The State produced no direct evidence and only minimal circumstantial evidence that Bradshaw had actual knowledge that he was in possession of a stolen car. In his closing argument and rebuttal argument, the prosecutor made repeated improper comments on Bradshaw's silence and invited the jury to infer knowledge from his silence, advancing the impermissible link between silence and guilt. The prosecutor's comments on Bradshaw's silence shifted the burden of proof to Bradshaw to offer the explanation for the *only* disputed element—what he knew. Furthermore, the prosecutor lowered its burden to prove Bradshaw's knowledge by repeatedly asserting that the jury could find Bradshaw guilty if the jury found he "should have known" the car was stolen. VRP (Dec. 13, 2017) at 58.

At trial, the State's sole evidence that Bradshaw had actual knowledge the car was stolen was that (1) Bradshaw looked away as his car passed Blodgett, (2) Bradshaw left the car after parking it and left the keys with another passenger, (3) Bradshaw was located in a locked tent, and (4) Bradshaw had no registration or ownership papers with him nor were there any in the car.[5]

Because the State did not present any direct evidence, the jury could find Bradshaw guilty only if it found the State's circumstantial evidence sufficient to support the inference that Bradshaw had actual knowledge. As noted above, this circumstantial evidence was not particularly strong. The prosecutor's cumulative errors bolstered its position on the only disputed element at trial; thus, there is a substantial likelihood that the prosecutor's repetitive misstatements influenced the jury and affected its verdict.

No curative instruction could have remedied the cumulative effect of the prosecutor's multiple misstatements of the law. *See Allen*, 182 Wn.2d at 377. "The jury knows that the prosecutor is an officer of the State" and has a duty to act only in the interest of justice. *Warren*, 165 Wn.2d at 27. We expect prosecutors to carefully and articulately explain legal concepts to jurors because a prosecutor's misstatement of the law has a "'grave potential to mislead the jury.'" *Allen*, 182 Wn.2d at 380 (quoting *Davenport*, 100 Wn.2d at 763). The prosecutor's misconduct here permeated his argument and could not have been cured by an instruction.

We hold that the prosecutor committed prejudicial misconduct by commenting on Bradshaw's silence, which shifted the burden of proof, and by misstating the proper standard upon which the jury could find Bradshaw acted with knowledge.

---

[5] The State argued repeatedly that Bradshaw "ran away" from the car, but no witness testified to this. VRP (Dec. 13, 2017) at 64. The State also argued that Bradshaw "abandoned" the car, but there was no evidence to suggest that the car was parked illegally or haphazardly. *Id.* at 62.

No. 51837-6-II

Because we reverse on these grounds, we do not address Bradshaw's remaining claims of prosecutorial misconduct, instructional error, ineffective assistance of counsel, or his statement of additional grounds for review.

CONCLUSION

We hold that the prosecutor committed prejudicial misconduct during closing argument and rebuttal argument by commenting on Bradshaw's exercise of his constitutional right not to testify and by misstating the State's burden to prove knowledge. We reverse Bradshaw's conviction and remand for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, P.J.

MELNICK, J.

16