IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37468-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CODY FOREST WOLFLEY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Cody Forest Wolfley appeals his convictions for first degree attempted criminal trespass, residential burglary, third degree malicious mischief, second degree criminal trespass, and possession of a controlled substance. We affirm the bulk of Mr. Wolfley's convictions, but reverse the two controlled substance convictions pursuant to *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). This matter is remanded for resentencing.

FACTS

On the night of October 17, 2017, Susannah Parker was alone in her home in Medical Lake, Washington. She went to bed around 9:00 p.m., at which point her house was dark. There were no outside lights illuminated. No car was parked in the driveway. From the outside of the residence, it might have appeared no one was home. At around 11:30 p.m., Ms. Parker heard a loud crashing sound near her front door. Concerned there

might be a falling tree, she went to investigate. Instead of a tree, Ms. Parker encountered an unknown man, later identified as Cody Wolfley.

Mr. Wolfley had kicked open the door and was starting to enter the residence when he came face to face with Ms. Parker. Ms. Parker yelled at Mr. Wolfley and ordered him to get out. Mr. Wolfley then raised his hands and started screaming "help me, help me, help me." 1 Report of Proceedings (RP) (Feb. 12, 2020) at 104. Ms. Parker noted Mr. Wolfley appeared out of it. His eyes were "big and frantic." *Id*. at 112. Mr. Wolfley stood at Ms. Parker's door for a short while, then turned around and left.

Mr. Wolfley then moved through the neighborhood to different houses, kicking at doors and damaging property. Various neighbors heard Mr. Wolfley yelling. His speech was often garbled. But at points he could be heard yelling words to the effect of "kill me" and "don't kill me." *See Id*. at 124, 127, 144, 153, 164, 167.

Multiple calls were placed to 911. Officers found Mr. Wolfley on the steps to a residence. Mr. Wolfley was arrested, searched, and found to be in possession of heroin and methamphetamine. Officers believed Mr. Wolfley showed signs of being under the influence of stimulants. He was deemed too intoxicated to be able to understand or waive his *Miranda*[1] rights. The jail initially refused to take custody of Mr. Wolfley based on his

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

intoxication. Mr. Wolfley was hospitalized for several hours before being cleared for booking into the jail.

The State charged Mr. Wolfley with several offenses related to his conduct. At trial, Mr. Wolfley pursued the affirmative defense that voluntary intoxication prevented him from forming the intent necessary to commit the offenses of burglary, trespass and malicious mischief. Mr. Wolfley did not testify at trial or present any substantive testimony.[2] Instead, to support his defense theory, Mr. Wolfley relied on testimony presented during the State's case from law enforcement and other witnesses describing Mr. Wolfley's odd behavior and apparent intoxication. At the close of evidence, the trial court issued a voluntary intoxication instruction to the jury.

During summation, the prosecutor argued the jury could infer Mr. Wolfley had the requisite intent to commit the crimes charged based on his conduct. At several points, Mr. Wolfley objected to the prosecutor's arguments, claiming the prosecutor was improperly shifting the burden of proof or misstating the evidence. The court overruled Mr. Wolfley's objections.

---

[2] Mr. Wolfley called one witness to rebut law enforcement testimony.

The jury convicted Mr. Wolfley on all charges, but reduced the charge of attempted residential burglary to attempted criminal trespass. At sentencing, Mr. Wolfley received a drug offender sentencing alternative.

Mr. Wolfley timely appeals his judgment and sentence.

## ANALYSIS

*Sufficiency of the evidence—burglary*

Mr. Wolfley was convicted of burglarizing Ms. Parker's home. To prove this charge, the State was obliged to show Mr. Wolfley entered Ms. Parker's residence with intent to commit a crime. Mr. Wolfley argues that given his intoxication, the State's evidence was insufficient to prove intent.

The standard of review governing a sufficiency challenge is extremely deferential. *See In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 364, 256 P.3d 277 (2011). The test is "'whether, after viewing the evidence in the light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality opinion)). All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *Id.* (quoting *State v.*

*Walton*, 64 Wn. App. 410, 415, 824 P.2d 533 (1992), *abrogated on other grounds by In re Pers. Restraint of Cross*, 180 Wn.2d 664, 327 P.3d 660 (2014)).

The State's evidence was sufficient to prove intent. Although it was undisputed Mr. Wolfley was intoxicated, the evidence of intoxication was not so strong as to prevent the jury from inferring an ability to form criminal intent. The State presented evidence suggesting Mr. Wolfley targeted Ms. Parker's residence for a burglary because all the lights in and around the house were off and it appeared no one was home. It was uncontested that Mr. Wolfley did not start crying for help until after Ms. Parker encountered him at the door and ordered him to leave. The jury could infer Mr. Wolfley decided to cry out for help once he was caught in the act of trying to enter the residence. This type of purposeful conduct is indicative of the capacity to form intent. The State's evidence, while far from overwhelming, was minimally sufficient to justify the jury's verdict.

Contrary to Mr. Wolfley's arguments, our decision in *State v. Sandoval*, 123 Wn. App. 1, 94 P.3d 323 (2004), does not suggest a different result. The issue in *Sandoval* was not evidentiary sufficiency, but the propriety of a permissive inference instruction. Here, the trial court denied the State's request for a permissive inference instruction. *Sandoval* does not support Mr. Wolfley's position.

*Comment on the right to remain silent*

Mr. Wolfley claims the prosecutor committed misconduct during summation by commenting on Mr. Wolfley's right to silence under the Fifth Amendment to the United States Constitution. Although this issue was not raised at trial, it is the type of argument that can be asserted for the first time on appeal. *See State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). We therefore review the details of Mr. Wolfley's claims.

Following are excerpts of the prosecutor's arguments that Mr. Wolfley claims violated his Fifth Amendment rights:

*Initial summation*

> [Prosecutor]: . . . Mr. Wolfley's intent was to burglarize this home. And why do we say that? Because he doesn't live here. Yes, he may have been high on something, but you didn't hear any evidence about what he was high on, and you didn't hear any evidence that he was yelling or look[ing] for help from anybody else.
> [Defense counsel]: Your Honor, I would have to object. [The prosecutor] is trying to shift the burden to the defense.

1 RP (Feb. 19, 2020) at 442. The objection was overruled.

> [Prosecutor]: . . . You heard that he kicked the door in. You heard that he yelled, "help me, help me, help me," but you didn't hear any evidence or any testimony about what drugs he took, why he needed help, why he picked this house instead of any of these other houses, what he was doing in this neighborhood, even how he got to this neighborhood. All we know is that he yelled "help me, help me," and he looked frazzled.
> Then he ran from this house without waiting for help. . . . [I]f he just needed help, why didn't he just ring the doorbell? Why didn't he just knock

on the door? Why did he go to the one place that looked like nobody was living there? That's because he had an intent to commit a burglary in that home and if it wasn't for Ms. Parker intervening, that burglary would have occurred.

*Id*. at 442-43. No objection was made to this argument.

[Prosecutor]: . . . [O]n or about October 17, 2019, [Mr.] Wolfley did an act that was a substantial step toward the commission of residential burglary. He did the same thing [at the Parker house] that he did over here. Open the storm door and start kicking on the door. What was he intending to do when he gets inside? We don't know. He had run all this way, busted through a couple of fences and jumped one fence and was yelling erratically, nobody could understand what he as saying, gets to this house. He was obviously very frustrated, he sees the light come on because it's a motion sensor, tries to knock that light out to conceal himself.

*Id*.at 444-45. The court overruled a defense objection to facts not in evidence.

[Prosecutor]: He may have been on some kind of intoxicant, we don't know what that is because there's no evidence of what he had taken, when he had taken it, or how it affected him.

*Id*. at 445. The court overruled a defense objection that the prosecutor was misstating the facts.

*Rebuttal summation*

[Prosecutor]: So looking at this case, don't allow yourself to be confused by this instruction that says that because he's intoxicated he can go and do all these things. He can't. A person that is so intoxicated would [not] have went through the storm door. A person that is so intoxicated would [not] have listened [to] Ms. Parker say get out of my house. A person that is so intoxicated would not have been able to walk on their own to the hospital. Maybe he was intoxicated; we don't know. We don't know what he had, we don't know when he took it. And it is reasonable that because he

was caught now he's got to make up an excuse. He's now acting out of fear to try to make something to show that, hey, I wasn't doing anything wrong. Don't be confused. Common sense. You don't have to throw it out the door just because you're on a jury.

*Id*.at 481. There was no objection to this line of argument.

Mr. Wolfley claims the prosecutor's argument violated the Fifth Amendment because it constituted an indirect comment on his failure to testify. Indirect references to a defendant's silence are prohibited if they "'either (1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally have understood them as a comment on the defendant's failure to testify.'" *United States v. Triplett*, 195 F.3d 990, 995 (8th Cir. 1999) (quoting *Sidebottom v. Delo*, 46 F.3d 744, 759 (8th Cir. 1995)).

A prosecutor does not violate the Fifth Amendment simply by pointing out the absence of evidence supporting a defendant's theory of the case. But like many aspects of a prosecutor's summation, things can get tricky. In cases where the defendant elects not to testify, the prosecutor cannot argue about holes in the evidence if the defendant is the only individual who could fill in the missing information. *See State v. Fiallo-Lopez*, 78 Wn. App. 717, 729, 889 P.2d 1294 (1995). In such circumstances, the prosecutor's comments naturally would cause the jury to focus on the defendant's failure to testify.

8

*State v. Ramirez*, 49 Wn. App. 332, 337, 742 P.2d 726 (1987). This undermines the Fifth Amendment's guarantee of the right to silence.

Mr. Wolfley's primary Fifth Amendment claim is that the prosecutor impermissibly argued about the lack of evidence regarding Mr. Wolfley's drug use. According to Mr. Wolfley, this information could have only been supplied through his testimony. Because he elected not to testify, the prosecutor's arguments indirectly commented on Mr. Wolfley's exercise of his Fifth Amendment rights.

We disagree with Mr. Wolfley's claim that the prosecutor's intoxication arguments constituted a comment on Mr. Wolfley's silence. The missing intoxication evidence was not something that would have naturally or necessarily come from Mr. Wolfley. At the time of his arrest, Mr. Wolfley was evaluated by several medical professionals, including hospital personnel. Presumably he was given a blood test. At the very least, he was given some sort of treatment for his impaired state. Hospital records, coupled with possible medical or expert testimony, could have supplied the missing intoxication information referenced by the prosecutor during summation. Mr. Wolfley was not the only, or even the best, possible source of information on the subject. The prosecutor's arguments did not indirectly implicate Mr. Wolfley's right to silence.

Mr. Wolfley also criticizes the prosecutor's argument that the jury did not hear any testimony regarding "why [Mr. Wolfley] needed help, why he picked this house instead of any of these other houses, what he was doing in this neighborhood, even how he got to this neighborhood." 1 RP (Feb. 19, 2020) at 442-43. This complaint has more merit. Only Mr. Wolfley could have supplied the answers to this line of questions. Thus, the prosecutor's comments, as phrased, could be interpreted as a comment on the right to silence.

While the prosecutor's comments may have been improper, they did not generate an objection. Given this circumstance, relief on appeal turns on whether Mr. Wolfley can demonstrate the improper argument was so flagrant and ill intentioned that it could not be remedied by a curative instruction. *See Emery*, 174 Wn.2d at 760-61.[3]

Most prosecutorial misstatements do not meet the flagrant and ill-intentioned standard. We are loath to second guess counsel's decision to forego an objection during trial. "Not every prosecutorial misstep merits remand. Deference is instead owed to the

---

[3] As explained in *Emery*, absent exceptional circumstances such as the purposeful injection of racial bias, improper prosecutorial argument is not judged by a constitutional harmless error analysis. 174 Wn.2d at 757-59. When improper argument does not generate an objection at trial, it is subject to the flagrant and ill-intentioned standard of assessing prejudice. *Id.* at 760-61. A RAP 2.5(a)(3) analysis is not applicable in this context.

trial court's ability to oversee the administration of justice, defense counsel's judgment about whether an objection was worth raising, and a jury's ability to independently assess the merits of the case." *In re Pers. Restraint of Richmond*, 16 Wn. App. 2d 751, 754, 482 P.3d 971 (2021).

When assessing whether to grant relief based on an unpreserved claim of prosecutorial misconduct, we focus on the type of harm caused by the prosecutor's statement. *Emery*, 174 Wn.2d at 761-62. Inflammatory statements that cause incurable prejudice require no objection to result in post-conviction relief. "An objection is unnecessary . . . because 'there is, in effect, a mistrial and a new trial is the only and the mandatory remedy.'" *Id*. at 762 (quoting *State v. Case*, 49 Wn.2d 66, 74, 298 P.2d 500 (1956)). But when a prosecutor's misstatement is merely legalistic, a timely objection and request for curative instruction is usually adequate to address potential prejudice. *See id*. at 762-63. Even when the prosecutor's legal misstep has constitutional implications, the absence of an objection will generally bar relief on appeal. *Id*. at 763-64.

Here, the prosecutor's comments about the absence of evidence were not inherently inflammatory. The prosecutor was not appealing to bias or the jury's emotions. Instead, it appears the prosecutor was trying to rebut defense counsel's assertion that Mr. Wolfley's conduct was consistent with someone crying out for help. A timely

objection and request for a curative instruction could have reoriented the prosecutor's comments and reminded the jury that Mr. Wolfley had no burden to present evidence and that no inference could be made from his decision not to testify. Reversal based on an unpreserved claim of misconduct is unwarranted.

*Assistance of counsel*

Mr. Wolfley claims his trial attorney failed to provide effective assistance by not asserting Fifth Amendment objections during the prosecutor's closing argument. To demonstrate ineffective assistance, Mr. Wolfley must show both deficient performance and prejudice. *Id*. at 754-55. Here, that standard has not been met.

As set forth above, the majority of Mr. Wolfley's complaints about the prosecutor's closing argument did not implicate the Fifth Amendment. Thus, counsel did not perform ineffectively by failing to lodge an objection. While there was a brief portion of the prosecutor's argument that could have generated a successful Fifth Amendment objection, Mr. Wolfley has not shown counsel's conduct resulted in prejudice. The prosecutor's comments were a minor part of summation and did not undermine Mr. Wolfley's intoxication defense. Counsel did not deprive Mr. Wolfley of his right to a fair trial by failing to object.

12

No. 37468-8-III
*State v. Wolfley*

*Simple possession convictions*

The parties agree Mr. Wolfley's convictions for possession of heroin and methamphetamine must be reversed based on the Supreme Court's recent decision in *Blake*. We accept this agreement and remand for purposes of vacating the two convictions and resentencing. The parties also agree the judgment and sentence contains scrivener's errors. Those can be remedied on remand.

CONCLUSION

We affirm Mr. Wolfley's convictions for first degree attempted criminal trespass, residential burglary, three counts of third degree malicious mischief, and second degree criminal trespass. This matter is remanded with instructions to vacate the remaining two convictions for possession of a controlled substance, and for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____, J.          _____, J.
Fearing, J.                                    Lawrence-Berrey, J.

13